**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lazaro CARABALLO, Santiago Gonzalez,**
**. and Juan de la Caridad Ramirez,**
**Defendants-Appellants.**

**No. 77–5748**
**Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

April 24, 1978.

---

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Neal R. Sonnett, Lawrence E. Besser, Miami, Fla., for defendants-appellants.

Jack V. Eskenazi, U. S. Atty., Hugh F. Culverhouse, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Defendants Lazaro Caraballo, Santiago Gonzalez, and Juan de la Caridad Ramirez were convicted after a bench trial of conspiring to import marijuana into the United States in violation of 21 U.S.C. § 963 and to distribute marijuana in violation of 21 U.S.C. § 846. The sole basis for reversal urged on this appeal is that the trial judge erred in denying the defendants' motion to suppress the evidence—approximately 11,000 pounds of marijuana—seized in a warrantless search of their vessel by United States Customs agents. Agreeing that the search and subsequent seizure were within statutory and constitutional limits, we affirm.

The following facts were developed at the hearing on the motion to suppress. On May 10, 1973, a Customs pilot patrolling the Great Bahama Bank spotted the defendants' vessel, MISS SUSAN, approximately 40 miles east of Key Largo and apparently heading to a point slightly south of the Florida coast. The pilot flew close to the vessel, and on observing that it was an American lobster boat carrying an "unusual" cargo of stacked brown burlap bags covered by a tarpaulin, determined to maintain visual and radar surveillance. Two hours later, the pilot returned to his base to avoid a threatening storm and reported his observations concerning MISS SUSAN, including his suspicion that the burlap bags contained marijuana. A second plane was dispatched to relocate the vessel. The pilot spotted the boat approximately 11 miles off the Florida coast, following an erratic and meandering course. This pilot flew very low over the vessel and saw "numerous bales of what appeared to be marijuana." With this information, the pilot notified the Customs patrol of the vessel's location and suspected cargo, and a Customs boat was dispatched to observe MISS SUSAN and board her if the suspicions as to the cargo were strengthened. Officer Moore first sighted MISS SUSAN from a Customs patrol boat 6 miles off the Key Biscayne coast, traveling an erratic course and riding very low in the water. From a quarter mile distance, the officer could see brown bags stacked under a tarpaulin in a pile extending over six inches above the gunwale of the boat, bags of the sort often used, in the officer's experience, to transport contraband.

Based on these observations, the information transmitted from the pilots, the fact that MISS SUSAN had come from International waters, and on the circumstances of an imminent storm and swiftly gathering darkness and the obvious fact that MISS SUSAN was heading for an unknown landing spot on the Florida coast, the Customs officer determined to stop and board the vessel. Once on board, the agent lifted the tarpaulin and detected a strong odor of marijuana emanating from the burlap bags. The defendants were then arrested and the evidence seized.

The Government urges, and the defendants concede, that the boarding and search were based on 19 U.S.C. § 1581(a), which provides:

Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters . . . and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

Customs waters are defined as the waters within 12 miles of the United States coast;[1] when intercepted, MISS SUSAN was clearly inside this area. While this statute grants broad authority for customs searches, the exercise of power under § 1581(a) must be reasonable. *United States v. McDaniel,* 5 Cir., 1972, 463 F.2d 129, 134, cited in *United States v. Ingham,* 5 Cir., 1974, 502 F.2d 1287, 1291 n. 6, *cert. denied,* 1975, 421 U.S. 911, 95 S.Ct. 1566, 43 L.Ed.2d 777. The Government first contends that this search should be governed by border search standards and asserts that the boarding and search are valid because the agents had "reasonable suspicion" to believe that contraband was on board. The defendants in turn argue that because the vessel was still three miles outside of United States territorial waters, the search cannot be measured as a border search.[2] Some courts, particularly the Ninth Circuit, have held that searches conducted under § 1581(a) must be based on probable cause or consent or must be justifiable as an exception to these standards, an exception such as a border search. *United States v. Stanley,* 9 Cir., 1977, 545 F.2d 661, 665; *United States v. Tilton,* 9 Cir., 1976, 534 F.2d 1363. Because we hold that the Customs agents clearly had probable cause for their boarding and search of MISS SUSAN, we need not here decide what lower showings might also be required for § 1581(a) searches.

The Customs agents' actions can be justified in this case by facts giving rise to probable cause to believe that the vessel contained contraband. Probable cause exists if the "facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been [or is being] committed . . . .." *United States v. Tuley,* 5 Cir., 1977, 546 F.2d 1264; *United States v. Worthington,* 5 Cir., 1977, 544 F.2d 1975. The vessel's erratic course, its origin in international waters, the unusual nature of the cargo for a lobster boat, the fact that it was riding low on the water, and the officers' experience that the bags sighted on board were of a type commonly associated with the importation of marijuana, provide the totality of the circumstances and the inferences properly drawn therefrom that form the probable cause calculus. We look to the collective knowledge of the officers who tracked, intercepted, boarded, and searched the vessel, and take into account the experience of the Customs officials involved. *United States v. Clark,* 5 Cir., 1977, 559 F.2d 420, 424. The probable cause standard is satisfied in this case.

That the search was conducted without a warrant is justified by the exigent circumstances surrounding the events in question. An immediate search was reasonably undertaken in view of the inclement weather, the increasing darkness, the vessel's unknown destination on the Florida coast, and the consequent danger that the vessel and its suspected contraband would escape interception.

AFFIRMED.

---

1. 19 U.S.C. § 1401(j) (Supp.1976). 19 C.F.R. 162.63 states that under the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.,* and the Controlled Substances Import and Export Act, 21 U.S.C. §§ 951 *et seq.,* seizures of controlled substances are to be handled in the same manner as other customs seizures.

2. The Government directs our attention to cases emphasizing that the crucial factor in cases finding a functional equivalent of a border or an extended border is the high degree of likelihood, present in this case as well, that the vessel has travelled from foreign point. E. g., *Almeida-Sanchez v. United States,* 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (automobile search); *United States v. Brennan,* 5 Cir., 1976, 538 F.2d 711 (airplane search); *United States v. Ivey,* 5 Cir., 1977, 546 F.2d 139 (airplane search); *United States v. Hill,* 5 Cir., 1970, 430 F.2d 129 (search of truck loaded with goods from newly arrived vessel); *United States v. Solmes,* 9 Cir., 1975, 527 F.2d 1370 (search of vessel). We note these cases for the not yet written opinion that will define the proper role of border-type searches under § 1581(a) *for this Circuit.*