395 So.2d 778 (1981)
STATE of Louisiana
v.
Preciado Julio ORDONEZ
No. 67660.
Supreme Court of Louisiana.
March 2, 1981.
Rehearing Denied April 6, 1981.
*779 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Jerry G. Jones, Dist. Atty., for plaintiff-appellee.
Steven Broussard, Lake Charles, for defendant-appellant.
MARCUS, Justice[*].
Preciado Julio Ordonez was charged by bill of information with possession with intent to distribute marijuana in violation of La.R.S. 40:967. After trial by jury, defendant was found guilty as charged and sentenced to serve ten years at hard labor. On appeal, defendant relies on four assignments of error for reversal of his conviction and sentence.

FACTS
On the morning of December 28, 1979, United States Customs Service Agent William J. Kennedy received word at his office in Cameron, Louisiana, from a confidential informer that a boat was lying about one hundred yards off the Louisiana coast and approximately four or five miles east of Rockefeller Refuge near Grand Chenier. The informer stated that the boat had apparently run aground. Kennedy contacted James Nunez, an agent with the Louisiana Wildlife and Fisheries Division, who made arrangements for a helicopter to take them over the area where the boat was sighted. The vessel was at anchor and appeared to be a shrimp trawler but it had no boards or fishing rigging attached to it. Kennedy saw no name, no homeport designation, and no registration numbers displayed on the vessel. Some of the crew members on the deck appeared to be black or Latin males.
Upon his return, Kennedy formed a boarding party composed of members of the Calcasieu Parish and Lake Charles Sheriff's offices and the Louisiana Wildlife and Fisheries Division and deputized them as U. S. customs agents. He and five others proceeded by skipjack from Rockefeller Refuge to the vessel, while a helicopter, after leaving two armed men on shore, hovered over Kennedy and his party while they boarded the boat. Kennedy displayed his badge and shouted, "Federali," and after assembling all of the vessel's crew on deck, asked in *780 limited Spanish for the captain. Defendant indicated through gestures and speaking Spanish that the captain had departed. When Kennedy asked for the ship's documents, defendant was unable to produce any. At this point, Kennedy noticed that there was a canvas and rope securing the cargo hold of the vessel. He asked defendant in Spanish what he was carrying but defendant did not answer. He repeated the question, this time asking, "What are you carrying here, Marijuana?" to which defendant replied in Spanish, "a little bit." Kennedy then removed the hatch cover from the cargo hold and discovered approximately ten tons of marijuana in burlap bundles in the hold. In his limited Spanish, Kennedy then attempted to place defendant and the rest of the crew under arrest, frisked them for weapons, and loaded them aboard the skipjack to be escorted to Rockefeller Refuge.
Defendant's testimony revealed that the vessel had sailed from Columbia a month earlier and had been anchored offshore in its present location for sixteen days after the vessel had struck an object, damaging the rudder. The two Americans who hired him, one of whom served as captain, informed him during the voyage that the boat was carrying marijuana. When the rudder became damaged, defendant stated that the two Americans left in a small motorboat. They never returned to the boat and were apparently never identified or found.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion to suppress the marijuana seized as a result of a warrantless search by United States customs agents of the vessel on which he was arrested.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1976); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these exceptions is a search at a border or its functional equivalents without probable cause of an individual or a conveyance seeking entry into our country from outside. United States v. Ramsey, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977); Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).[1]
In Almeida-Sanchez, the United States Supreme Court stated:
It is undoubtedly within the power of the Federal Government to exclude aliens from the country. [Citation omitted.] It is also without doubt that this power can be effectuated by routine inspections and searches of individuals or conveyances seeking to cross our borders....
Whatever the permissible scope of intrusiveness of a routine border search might be, searches of this kind may in certain circumstances take place not only at the border itself, but at its functional equivalents as well.
In Ramsey, the Supreme Court further stated:
Border searches, then, from before the adoption of the Fourth Amendment, have been considered to be "reasonable" by the single fact that the person or item in question had entered into our country from outside. There has never been any additional requirement that the reasonableness *781 of a border search depended on the existence of probable cause. This longstanding recognition that searches at our borders without probable cause and without a warrant are nonetheless "reasonable" has a history as old as the Fourth Amendment itself. [Footnote omitted.] We reaffirm it now.
In view of the foregoing, we conclude that an individual or a conveyance seeking entry into our country from outside may be searched without probable cause and without a warrant at a border or its functional equivalents.
In the instant case, United States customs agent Kennedy testified that the vessel was located approximately one hundred yards from the Louisiana coast and about four or five miles east of Rockefeller Refuge near Grand Chenier. Clearly, this was within what we consider the "functional equivalents" of the border itself.[2] Secondly, we find that the record fully supports the conclusion of the officers that the vessel had crossed our border from foreign waters. The vessel bore no name or registration number. Nor did it have the necessary rigging to give the impression that it was a vessel engaged in fishing. Moreover, the crew appeared to be of foreign origin.
Hence, we conclude that the search of the vessel and the seizure of the contraband located thereon properly fell within our border search exception to the fourth amendment prohibition against unreasonable searches and seizures.[3] The trial judge did not err in denying defendant's motion to suppress.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in refusing to allow the filing of his motion to suppress an oral inculpatory statement.
Defendant's original motion to suppress was limited to "a leaflike material (believed to be marijuana), presently in possession of the State...." The hearing on the motion began on February 5, 1980. On February 6, 1980, defense counsel attempted to file a motion to suppress an oral inculpatory statement allegedly made by defendant. He argued that he only became aware of the statement during the hearing on the day before. The trial judge, relying upon La.Code Crim.P. art. 703, considered the motion untimely and in his discretion refused to allow the filing of the motion.[4] During trial, the state laid a predicate for introduction of the statement in evidence outside the presence of the jury.
Since a hearing was held outside the presence of the jury on the issue of the voluntariness of the inculpatory statement and since defendant makes no showing of prejudice, we are unable to say that the trial judge's refusal to permit the filing of the motion to suppress constituted reversible error.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in denying his motion for a continuance.
The record reflects that defense counsel was appointed to represent defendant on or *782 about January 10, 1980. On the day of trial (February 11, 1980) prior to its commencement, defense counsel filed a written motion for a continuance alleging that a delay in the trial was necessary because of the difficulties he was having in communicating with his Spanish-speaking client. Although an interpreter was appointed on January 15, 1980 to represent defendant and nine of the crew members, defense counsel stated that a separate interpreter was not appointed for defendant until February 8, 1980. He further argued that the promptness in which the case was brought to trial by the state added to his difficulties. Therefore, he contended that he lacked adequate time to prepare for trial. The trial judge denied the motion.
The granting of refusal of a motion for a continuance rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear abuse of discretion. La.Code Crim.P. art. 712; State v. Reed, 378 So.2d 923 (La. 1980); State v. Lee, 364 So.2d 1024 (La. 1978); State v. Adams, 347 So.2d 195 (La. 1977). Whether a refusal to grant a continuance was justified depends primarily on the circumstances of the particular case. State v. Parsley, 369 So.2d 1292 (La.1979); State v. Winston, 327 So.2d 380 (La.1976). We have generally declined to reverse convictions absent a showing of specific prejudice caused by the denial of a continuance. State v. Durio, 371 So.2d 1158 (La.1979); State v. Hammontree, 363 So.2d 1364 (La. 1978).
Defense counsel makes no showing of how he could have presented a better defense had he been given additional time to prepare his case. Absent a showing of specific prejudice, we are unable to say that the trial judge abused his discretion in denying defendant's motion for a continuance.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in permitting in evidence an oral inculpatory statement made by him in response to interrogation by customs agent Kennedy after his freedom had been restrained but before being advised of his Miranda rights.
The state laid a predicate for introduction of the statement in evidence outside the presence of the jury. Customs agent Kennedy and his party boarded the vessel and assembled the crew, including defendant, on the deck. Although the boarding party was armed, Kennedy testified that he did not believe anyone in his party had drawn his weapon. Although Kennedy had difficulty communicating with the Spanish-speaking crew, he managed to get responses to his inquiries as to where the captain was, from where the vessel was coming, and if the vessel had any papers. Kennedy then asked defendant in Spanish as he pointed to the hatch, "What are you carrying here?" Receiving no response, he repeated the question and asked: "What are you carrying here, Marijuana?" Defendant replied: "Poquito," meaning "a little bit" in Spanish. The trial judge found that since the statement was not made during "custodial interrogation," no Miranda warnings were required. He also found the statement was freely and voluntarily made. Defendant noted his objection.
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Miranda, the United States Supreme Court observed: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been ... deprived of his freedom of action in any significant way."
When customs agent Kennedy and his party boarded the vessel, they had no reason to believe that the cargo was composed of contraband. They had a right to *783 board the vessel, examine the manifest and other documents and papers and search the vessel and any person thereon. The inquiries made by customs agent Kennedy as he boarded the vessel were made incidental to and in furtherance of this right. The inquiries were investigatory in nature. It was not the type of "custodial interrogation" that requires prior Miranda warnings. The trial judge did not err in permitting the statement in evidence.
Assignment of Error No. 4 is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
NOTES
[*] Judges Frederick S. Ellis, Luther F. Cole and J. Louis Watkins, Jr. of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Watson and Lemmon.
[1] The state also urges that the search was valid under 19 U.S.C. § 1581(a) (1980), which provides:

Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti-Smuggling Act, or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.
However, we recognize that no Act of Congress can authorize violations of the Constitution. Almeida-Sanchez v. United States, supra.
[2] Customs officers may go on board any vessel at any place in the United States or within the customs waters and examine the manifest and other documents and papers and search the vessel and any person located thereon. 19 U.S.C. § 1581(a) (1980). "Customs waters" is defined as waters within twelve miles of the United States coast. 19 U.S.C. § 1401 (1980); see also United States v. Caraballo, 571 F.2d 975 (5th Cir. 1978).
[3] This search would also be valid under 19 U.S.C. § 1581(a) (1980). This statute requires that the vessel be located within "customs waters" and that it crossed into our customs waters from outside. United States v. Tilton, 534 F.2d 1363 (9th Cir. 1976); United States v. Solmes, 527 F.2d 1370 (9th Cir. 1975). For the same reasons set forth in the text above, we find that the requirements were met here.
[4] At the time of trial, La.Code Crim.P. art. 703(B) provided that a motion to suppress a confession or inculpatory statement must be filed no later than three judicial days before trial on the merits begins. Defendant filed his motion on Wednesday, February 6, and the trial was on Monday, February 11.