411 So.2d 415 (1982)
STATE of Louisiana
v.
Joseph VACCARO.
No. 81-KA-0660.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 5, 1982.
*418 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., William Alford, Abbott J. Reeves, Peter J. Garcia, Asst. Dist. Attys., for plaintiff-appellee.
M. Reggie Simmons, Franklinton, for defendant-appellant.
EDWARDS, Justice Ad Hoc.[*]
Defendant, Joseph Vaccaro, was indicted by the grand jury of Washington Parish on June 30, 1980, for the first degree murder of Faith Hathaway, a violation of LSA-R.S. 14:30. Defendant entered a plea of not guilty and was tried before a jury of twelve, beginning on October 20, 1980. The jury returned a unanimous verdict of guilty as charged on October 23, 1980. In the sentencing hearing that followed, the jury was unable to reach a unanimous verdict and the trial court imposed a life sentence, without benefit of probation, parole or suspension of sentence. The defendant now appeals this conviction and sentence on the basis of twenty-three assignments of error.

FACTS
On May 28, 1980, at approximately 4:30 A.M., the victim, Faith Hathaway, was picked up near the Lake Theatre Disco, a lounge in Mandeville, Louisiana, by Robert Lee Willie and the defendant, Joseph Vaccaro. Hathaway, who had been out that night celebrating her upcoming induction into the Army, apparently accepted their offer to give her a ride home. Instead of taking her home, Vaccaro and Willie took Hathaway to Fricke's Cave, a heavily wooded, secluded gorge located south of Franklinton in Washington Parish. There Faith Hathaway was raped and killed. One of the perpetrators repeatedly stabbed the victim in the throat while the other held her hands down. The victim's body was discovered on June 4, 1980, by Michael Varnado, an investigator for the District Attorney's Office. On June 3, 1980, Vaccaro and Willie were arrested in Hope, Arkansas on charges of aggravated rape, aggravated kidnapping and attempted murder of a St. Tammany Parish couple. On June 10th and 11th, 1980, while still in Arkansas, defendant and Willie gave statements in response to questioning by Investigator Michael Varnado of the Washington Parish District Attorney's Office, Officer Ronnie Pierce of the Louisiana State Police, Deputy Donald Sharp of the St. Tammany Parish Sheriff's Office and Deputy Richard Newman of the Washington Parish Sheriff's Office.

ASSIGNMENT OF ERROR NO. 1
By this assignment, defendant contends the trial court erred in failing to require the state to provide defendant with any exculpatory statements made by the defendant to law enforcement officers in Texarkana, Arkansas. Defense counsel argues that he made it abundantly clear at the hearing on the motion for discovery that defendant requested all such exculpatory statements but that the state nevertheless withheld the information.
Defense counsel filed a motion for pre-trial discovery and alternatively a prayer for oyer which requested, among other things, any exculpatory evidence. In response to this request, the state responded: "The state has none." Attached to the *419 state's answer was, among other papers, transcribed statements of the defendant dated June 10, 1980 and June 11, 1980. Defendant filed a supplemental motion for pre-trial discovery and prayer for oyer. In this motion defendant asked the following question:
"7. At any time subsequent to his arrest, did the defendant deny knowledge pertaining to the alleged murder of Faith Hathaway? If so, state with specificity each and every occasion on which the defendant made such denials, to whom the denials were made, and when and where the said denials were made. (The defendant requests this information under the auspices of Brady v. Maryland.)"

In response to the above question, the state replied:
"7. Yes. The State knows of one such occasion. Tom Buell asked defendant while the defendant was in custody in Arkansas if he knew anything about the Hathaway girl and defendant did not answer any further questions. This is all State knows of denials at this time."
On August 12, 1980, the trial court conducted a hearing on the motion for pre-trial discovery. Defense counsel argued at the hearing that he "had information from what he read in the newspapers and through the district attorney's office that defendant made exculpatory statements." The prosecutor responded that he had heard hearsay accounts to the effect that exculpatory statements were made as to one of the crimes, and that as soon as he could find out to whom the statements were made, he would be glad to provide the information to defense counsel.
The trial court ordered the state to inform defense counsel of any of the information if the state was successful in making a determination what was said and which defendant made the statement. Defense counsel accepted the state's answer concerning defendant's denial of any knowledge pertaining to the murder as being sufficient. He reserved, however, the state's duty to obtain that information from Arkansas officials and provide defendant with the information at a later date. The court ruled the answer sufficient and the defendant noted an objection under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Defense counsel now argues that the state was aware of the fact that the defendant had denied knowledge of the death of Faith Hathaway because this fact was printed on the front page of a newspaper on June 9, 1980. He argues that at no time did the state disclose details of any conversation in which defendant denied knowledge of the murder.
It is well settled that the state may not suppress evidence that is favorable to the defendant and material to guilt or punishment when that evidence has been requested by defendant. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1966); Brady v. Maryland, supra; State v. Scott, 400 So.2d 627 (La.1981); State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977). In United States v. Agurs, supra, the United States Supreme Court stated:
"The rule of Brady v. Maryland ... arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." (427 U.S. at 103, 96 S.Ct. at 2397.)
Defense counsel neither argued in the trial court nor asserts in brief what material was discovered by defendant which the state had in its possession. Rather, counsel merely asserts that the state never disclosed details of conversations in which defendant denied knowledge of the crime. Defendant's assertion that exculpatory information existed is based on newspaper articles which stated that the defendant denied knowledge of the murder. Defendant has failed to show that any such statements existed, or that the statements were material and exculpatory. See State v. Landry, 388 So.2d 699 (La.1980). The state furnished *420 defendant with the only statement it claimed was within its knowledge.
Moreover, even if such statements existed, the nondisclosure did not so prejudice defendant that he was deprived of his constitutional right to a fair trial. The test for materiality, for purposes of Brady, is whether the admitted evidence creates a reasonable doubt that does not otherwise exist. United States v. Agurs, supra. An admission by the state that defendant had denied any knowledge of the victim's murder would not have created a reasonable doubt as to defendant's guilt in light of the substantial evidence against him. See State v. Hicks, 395 So.2d 790 (La.1981). Nor, under a lesser standard of materiality that may control specific requests for exculpatory material in advance of trial, would the evidence have likely altered the jury's verdict. See State v. Sylvester, 388 So.2d 1155 (La.1980). This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
By these assignments defendant contends that the trial court erred in refusing to require the state to disclose in pre-trial discovery motions whether the defendant had received medication or narcotics, and the number of hours of interrogation to which the defendant had been subjected prior to giving his taped statements.
Defendant sought this information in his supplemental motion for pre-trial discovery. In response to the questions, the state answered that it was not required to answer. During the hearing on the motions for discovery, the defendant argued that the evidence was needed in order to file a motion to suppress. The state argues that it was not required to answer and in fact did not know the answer. The trial judge ruled that the state's answer was sufficient.
In his brief, counsel for defendant asserts that Dr. Karlton Kemp of Texarkana, Arkansas prescribed drugs to the defendant in June, 1980. Defense counsel contends that the state's failure to furnish Dr. Kemp's medical records concerning Vaccaro precluded the defense from presenting evidence relative to Vaccaro's ability to knowingly waive his right to counsel before giving his statements to police. Defendant subpoenaed Dr. Kemp for a motion to suppress hearing to be held on October 16, 1980. On October 9, 1980, the doctor sent a letter to defense counsel stating that he would not be able to appear on that date, but was willing to give a deposition on any day available to defendant. No deposition was taken. Thus, even though defendant argues that he had no way of obtaining the amount and type of medication given to defendant other than by discovery, the record does not support his contention. Since defense counsel knew as much or more about the fact that defendant had been given medication, his failure to depose the doctor who allegedly administered the drugs invalidates his argument that the information was only available through discovery. Additionally, the state asserts in brief that the report of Dr. Karlton Kemp was given to defendant as soon as it received the information. According to the state, that report showed that medication had been prescribed on June 13, 1980, two days after the defendant's last statement was taken. Furthermore, defense counsel thoroughly examined the police officers who took defendant's statement during the hearing on the motion to suppress and failed to question either of them concerning medication given to the defendant. The officers did testify, however, that defendant was alert and responsive to their questions.
After the hearing the testimony of the police officers and the argument by counsel that defendant was unduly interrogated for an inordinate period of time, the trial judge denied the motion to suppress. Defendant's argument that he was entitled to pre-trial discovery of the number of hours of interrogation that defendant had been subjected to appears to be nothing more than an assertion of error in the trial court's denial of his motion to suppress the statements. The trial court committed no such error.
These assignments of error lack merit.

*421 ASSIGNMENTS OF ERROR NOS. 4 AND 5
By these assignments defendant contends that the trial court erred in refusing to order the state to disclose whether the defendant had been provided with appointed counsel within seventy-two hours of his arrest and whether his taped statements were made prior to his having been brought before a magistrate for the purposes of appointment of counsel.
This information is not included under the discovery provisions. LSA-C.Cr.P. art. 716-729.6. Moreover, the evidence presented at the motion to suppress hearing on October 8, 1980, reveals that defendant was taken before a federal magistrate on June 4, 1980. Despite several attempts by the magistrate to ascertain whether defendant wanted to exercise his right to counsel, defendant refused to exercise that right. Defendant was arrested on June 3, 1980. His taped statements which were admitted at trial were taken on June 10, 1980 and June 11,1980. Defense counsel became aware, in advance of trial, that defendant had been taken before a magistrate within seventy-two hours of his arrest and had been advised of his right to counsel which he persistantly refused.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends that the district attorney misled defense counsel to believe that the state was unable to ascertain through a laboratory test the blood alcohol content of the victim. He contends that the question of the victim's intoxication was important under the aggravating circumstances of first degree murder. Defendant argues that if the victim was intoxicated and did not resist the act to the utmost, then first degree murder could not be proven because the element of aggravated rape would be lacking. Defendant filed his motion for a bill of particulars on July 25, 1980. One of the questions asked was:
"What was the blood alcohol content of Faith Hathaway on or about the time of the offense?"
The state filed its answer on August 12, 1980. The answer instructed defendant to "see the attached autopsy report." The autopsy report stated that no blood, bile, or urine was available for analysis. At the hearing on the motion for a bill of particulars, the state asserted that the crime lab attempted to classify the blood, but because of the decomposition of the body, it was not able to do so. The defendant accepted the state's answer. The first autopsy was performed on June 5, 1980. Another examination was conducted the next day. The results of this examination were given to the state in the form of a supplemental report. This report was dated October 16, 1980, and stated that the blood of Faith Hathaway was determined to contain .10% alcohol by weight.
Defense counsel argues that the state introduced the report at the trial of the matter and that he was both surprised and prejudiced in his defense. Contrary to defense counsel's assertions, the record discloses that the defendant was notified and received a copy of the supplemental lab report on the third day of trial, October 22, 1980, the day after the report was received by the state. Furthermore, it was defense counsel who offered the lab report into evidence, without objection from the state.
LSA-C.Cr.P. art. 729.3 imposes a continuing duty upon a party prior to or during trial to promptly notify the other party and the court of the discovery of additional evidence previously requested by the other party and subject to discovery or inspection under the court order. The record reveals that the state satisfied this continuing duty by furnishing defense counsel with a copy of the supplemental lab report soon after it was received.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 7
By this assignment of error defendant contends that the trial court erred in refusing to order the state to disclose whether the defendant was charged as a principal or as an actual perpetrator of the *422 aggravating circumstances, i.e., aggravated rape.
The only question in defendant's motion for a bill of particulars relative to whether defendant was being charged as a principal to the crime involved was as follows:
"18. Is the defendant alleged to have been only a principal in the commission of the First Degree Murder of Faith Hathaway, or is he alleged to have actually committed the said crime by his own hands? If he is alleged to have committed the crime by his own hands, describe with particularity each of the acts whereby he allegedly took the life of Faith Hathaway."
The state responded that it was not required to answer. At the August 12, 1980 hearing on the motion for a bill of particulars, the trial court ruled that the answer was sufficient. The defendant objected to the court's ruling, however, he stated no reasons for his objection. Defense counsel now argues that he was precluded from adequately preparing a defense for trial because of the state's failure to answer. He also argues that the state intentionally sought to prosecute defendant as the actual perpetrator of the crime.
Under Louisiana law, the court may require the state to furnish a bill of particulars setting more specifically the nature and cause of the charge against the accused. LSA-C.Cr.P. art. 484; State v. Miller, 319 So.2d 339 (La.1975). Although the defendant is entitled to know what the state intends to prove, the bill of particulars cannot be used as a "fishing expedition" to discover details of the state's evidence. State v. Marcal, 388 So.2d 656 (La.1980); State v. Boyd, 359 So.2d 931 (La.1978); State v. Atkins, 360 So.2d 1341 (La.1978). The matter of furnishing a bill of particulars is discretionary with the trial judge and will not be disturbed unless error in the ruling complained of is to the detriment of the accused. State v. Boyd, supra; State v. Thornton, 351 So.2d 480 (La.1977). This court has held that a defendant accused of a crime is not entitled to a bill of particulars advising him of whether he is charged as a principal. State v. Ralph, 336 So.2d 836 (La.1976); State v. Willis, 322 So.2d 169 (La.1975); State v. Peterson, 290 So.2d 307 (La.1974).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 9
By this assignment defendant contends that the trial court erred in denying his motion to suppress the defendant's statements. He argues that the statements were involuntary because the state failed to prove that: (1) defendant was provided with an attorney before his statement was taken; (2) defendant was taken before a judge magistrate within seventy-two hours of his arrest; and (3) defendant was not under the influence of narcotic medication when he gave the statements.
Evidence adduced at the hearing on the motion to suppress showed the following: On June 3, 1980 agents of the FBI and officers of the Arkansas police arrested defendant in Hope, Arkansas on unrelated aggravated kidnapping, aggravated rape and attempted murder charges. Later that day, defendant was transported to Texarkana, Arkansas. Defendant was advised of his rights from a rights form by special agent Paul Maxwell. Agent Maxwell then gave the form to defendant and asked him to read it. The defendant replied that he could not read. The officer then re-read the form to defendant in the presence of Arkansas State Police Sergeant Richard Branch. Defendant indicated that he understood his rights and signed the waiver form. At that time, defendant's statement was taken by the officers. On June 4, 1980, defendant was taken before a United States magistrate who again informed defendant of his rights. The magistrate informed defendant of his right to have a court-appointed attorney and repeatedly asked him whether he desired an attorney. The defendant indicated that he did not want an attorney at that time. After the hearing before the U. S. magistrate, defendant was again informed of his rights by Agent Maxwell. The officers then took another statement *423 from defendant. Defendant was again advised of his rights and signed waiver forms on June 5, 1980 and June 6, 1980.
The following events transpired on June 10, 1980, in connection with the Hathaway case: Deputy Donald Sharp of the St. Tammany Parish Sheriff's Office interviewed defendant at the jail in Texarkana, Arkansas regarding the Hathaway murder and rape. Deputy Sharp advised defendant of his constitutional rights at approximately 4:30 P.M. The officers then interviewed defendant orally but the statement was not recorded. At 8:40 P.M. the same day, Investigator Michael Varnado of the Washington Parish District Attorney's Office and Deputy Sharp again interviewed defendant. The officers reviewed defendant's earlier waiver of rights form with him and asked him if he understood it. The defendant answered affirmatively. Defendant thereupon gave a tape recorded statement which was transcribed by an officer and signed by defendant. On June 11, 1980, Investigator Varnado and another officer advised defendant of his constitutional rights and obtained a final statement from him. In both statements defendant stated that Willie had actually raped the victim and had cut her throat while he held her hands.
The law is clear that before a confession can be introduced into evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-C.Cr.P. art. 703(C); LSA-R.S. 15:451; State v. Dison, 396 So.2d 1254 (La.1981); State v. Bell, 395 So.2d 805 (La.1981); State v. Haynie, 395 So.2d 669 (La.1981). The admission of a confession in the first instance is a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are unsupported by the evidence. See State v. Dison, supra, State v. Napier, 385 So.2d 776 (La. 1980); State v. Jackson, 381 So.2d 485 (La. 1980). This court has held that the state must rebut specific testimony introduced by the defendant concerning factual circumstances which indicate coercive measures or intimidation. State v. Dison, supra, State v. Franklin, 381 So.2d 826 (La.1980); State v. Davis, 380 So.2d 607 (La.1980).
In the instant case defendant has not made any specific allegations of police misconduct. Defendant did not introduce any evidence at the motion to suppress the statements. Defense counsel merely makes a general argument that the state must prove no misconduct occurred prior to and during the interrogations, because he, for various reasons, could not prove that it did.
The trial court did not abuse its discretion in denying the motion to suppress and admitting defendant's exculpatory statements into evidence. The state presented the testimony of several of the officers present and involved in the interrogation of the defendant. Each of them testified that the defendant was repeatedly advised of his Miranda rights, that he was taken before a U.S. magistrate the day following his arrest, that he constantly refused to exercise his right to court-appointed counsel and that he was not subjected to any mistreatment.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 10
By this assignment defendant contends that the trial court committed error in denying his motion for a change of venue. Defense counsel contends that a change of venue was mandated by LSA-C. Cr.P. art. 622 and Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). He argues that the denial of the motion for a change of venue violated the defendant's right to due process of law under the United States Constitution because he was denied a fair trial by a panel of impartial jurors.
LSA-C.Cr.P. art. 622 provides as follows:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for *424 any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
Under this article the defendant must prove more than mere public knowledge of facts surrounding the offense to be entitled to have his trial moved to another parish. The burden of proof is on the defendant to show that there exists such prejudice in the collective mind of the community that a fair trial is impossible. State v. Adams, 394 So.2d 1204 (La.1981); State v. Williams, 385 So.2d 214 (La.1980); State v. Felde, 382 So.2d 1384 (La.1980); State v. Sonnier, 379 So.2d 1336 (La.1979), on re-hearing 379 So.2d 1368 (La.1980). Whether defendant has made the requisite showing is a question addressed to the trial court's sound discretion which will not be disturbed on review in the absence of an affirmative showing of error and abuse of discretion. State v. Adams, supra; State v. Williams, supra; State v. Felde, supra; State v. Matthews, 354 So.2d 552 (La.1978); State v. Sheppard, 350 So.2d 615 (La.1977). We have thoroughly reviewed the record and examined the arguments raised by defense counsel. We are convinced that the trial court did not abuse its sound discretion in denying the change of venue motion.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 13
By this assignment defendant contends that the trial court erred in refusing to allow him to proceed with the motion to suppress the oral statement made to a female witness who testified in the case, and in denying the motion to suppress the statement. He argues that the statement was inadmissible because the defendant was intoxicated and the statement was not free and voluntary. This witness was a victim of the unrelated kidnapping and rape discussed above. At the trial of this matter she testified as follows:
"He said that he had a girlfriend before me and that when it was out of control she was raped and cut in the throat from ear to ear, just left lying there to die and..."
Defense counsel sought to establish at the hearing on the motion to suppress that the statement should be deemed involuntary and inadmissible because defendant was intoxicated at the time he made it. The trial court stated that the statement was made to a victim and not to a law enforcement officer and refused to allow defendant to call witnesses to the stand to establish that defendant was intoxicated. The trial court's ruling was erroneous.
In State v. Glover, 343 So.2d 118 (La. 1976), this court considered the admissibility of the inculpatory statements made by an insane defendant to his girlfriend which was overheard by authorities who had wired the woman with a transmitter. This court held that notwithstanding the apparent lack of custodial detention by officers of the state, the prosecution was still required to prove that the statement was voluntary, i.e., not the product of defendant's mental disease or defect. Glover made the following observations in this respect:
"The trial judge felt that defendant's inculpatory statement to his common-law wife, because it was precustodial, was not subject to the requirement that it be found free and voluntary under the standards set forth above before its admission in evidence. In this respect, we believe he erred. The provisions of Louisiana law establishing that only free and voluntary confessions and inculpatory statements are admissible draw no distinction between those made before and after the accused is taken into police custody. La. Const. art. 1, § 11 (1921); La.R.S. 15:451; La.Code Crim.P. art. 703(C) (1966). We have defined an "inculpatory statement" as one that refers to the out-of-court admission of incriminating facts made by the accused after the crime has been committed. It relates to past events. State *425 v. Fink, 255 La. 385, 231 So.2d 360 (1970). Defendant's inculpatory statement to his common-law wife, made almost six months after the crime with which he is charged occurred, incontestably falls within this definition. The state is not required, it is true, to show when it seeks to introduce a noncustodial inculpatory statement in evidence that the accused had been advised of his Miranda rights before it was made. State v. Roach, 322 So.2d 222 (La.1975). It still has the duty, however, of affirmatively showing that a noncustodial confession or inculpatory statement is free and voluntary. Therefore, the trial judge erred in ruling that it was necessary for the prosecution to lay this foundation and for him to rule thereon prior to the introduction of defendant's inculpatory statement to his common-law wife in evidence."
Intoxication can render a statement involuntary if it is of such a degree "as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying." State v. Rankin, 357 So.2d 803 (La.1978); see also State v. Godeaux, 378 So.2d 941 (La.1979). Defendant was therefore entitled to his hearing.
The error committed by the trial court was a harmless one, however. In State v. Redic, 392 So.2d 451 (La.1980), this court indicated that the erroneous admission of an inculpatory statement may be rendered harmless by the proper introduction of other statements of a stronger inculpatory nature. In the instant case, the prosecution introduced defendant's statements made to the authorities after his arrest. These statements, in which defendant admitted his involvement in the Hathaway slaying, were of a much stronger inculpatory nature than the statement testified to by the female witness, and rendered the admission of that statement a harmless error.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 14
By this assignment of error defendant contends that the trial court erred in refusing to grant his motion to recuse the district attorney. He argues that the district attorney should have been recused, not only because of his prejudice, but because of the reasonable appearance of prejudice on his part. Defendant refers to a statement made by the district attorney during an interview which appeared in a local newspaper. In that interview the district attorney, Marion Farmer, said that he would take personal charge of the state's prosecution of Willie and Vaccaro on charges of murdering Hathaway. The district attorney was quoted as saying "we owe it to the citizens of St. Tammany and Washington Parishes to make sure that these two animals do not walk our streets again." Defendant also argues that the district attorney and his staff released statements to the press and the other news media to the effect that the defendants had confessed to the crime.
Defendant apparently relies on LSA-C. Cr.P. art. 680 which provides in pertinent part as follows:
"A district attorney shall be recused when he: (1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice..."
In State v. Marcal, 388 So.2d 656 (La. 1980), this court held that in an action to recuse the district attorney, the defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. See also State v. Snyder, 256 La. 601, 237 So.2d 392 (La.1970). Both of the above-cited cases involved instances where the district attorney personally knew the defendant or the victim. In the instant case, defendant argues that the above quoted statement in addition to other statements made by members of the district attorney's staff, indicates that the district attorney was biased and prejudiced.
Our review of the record establishes that the defendant did not prove by a preponderance of the evidence that the district *426 attorney was personally biased or prejudiced against him within the meaning of LSA-C.Cr.P. art. 680(1).
This assignment of error lacks merit.

ASSIGNMENT OF ERRORS NO. 15 AND 17
By these assignments of error defendant contends that the trial court erred in denying defense counsel's motion for a continuance and motion to conduct individual voir dire out of the presence of other prospective jurors. Counsel argues that the granting of the above motions would have helped to insure a fair trial in light of the pre-trial publicity prejudicial to the defendant. He further argues that the normal voir dire procedure denied him a fair trial because he could not conduct an in depth voir dire concerning pre-trial publicity without tainting the remainder of the panel.
Defendant filed a written motion for a continuance based upon his limited contact with the defendant who was in federal custody in New Orleans, Louisiana. This motion made no reference to pre-trial publicity prejudicial to defendant. The continuance was filed on October 16, 1980, four days prior to trial. The trial judge denied the motion.
As a general rule, the denial of a continuance is not grounds for reversal absent an abuse of discretion. State v. Haarala, 398 So.2d 1093 (La.1981); State v. Ordonez, 395 So.2d 778 (La.1981); State v. Durio, 371 So.2d 1158 (La.1979). Unless the time to prepare the case is unreasonably short, State v. Durio, supra, the defendant must show specific prejudice arising out of the denial of a continuance. State v. Ordonez, supra. Counsel here has not made such a showing.
Defendant also argues that the trial court erred in denying his motion to conduct individual voir dire out of the presence of the other potential jury members. The defendant bases his argument on the United States Supreme Court's opinion in Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Justices Brennan, Stewart and Marshall indicated in a concurring opinion to Nebraska Press that it may sometimes be necessary to utilize this procedure "to maximize the likelihood that members of the venire will respond honestly to questions concerning bias, and to avoid contaminating unbiased members of the venire when other members disclosed prior knowledge of prejudicial information." 427 U.S. at 602, 96 S.Ct. at 2791, 2823. The defendant contends that the normal voir dire procedure denied him a fair trial because he could not conduct an in depth voir dire concerning pre-trial publicity without tainting the remainder of the panel.
In selecting a petit jury panel, details such as whether the jurors should be called singly or by groups are left to the trial court's discretion. State v. St. Amant, 413 So.2d 1312 (La.1981), No. 81-KA-0758; State v. Williams, 383 So.2d 996 (La.1979); State v. Groves, 311 So.2d 230 (La.1975). The calling of prospective jurors in groups, rather than singly, and their examination in the presence of each other does not, in the absence of special circumstances, deny a defendant a fair trial. State v. Williams, supra; State v. Dominick, 354 So.2d 1316 (La.1978); State v. Hegwood, 345 So.2d 1179 (La.1977); State v. Robinson, 302 So.2d 270 (La.1974). The burden is on the defendant to show special circumstances indicating why individual voir dire or sequestration of jurors during voir dire is warranted. State v. Monroe, 397 So.2d 1258 (La.1981).
Although individual voir dire may have been preferable in view of the extensive pre-trial publicity, defendant has not made the requisite showing of special circumstances to warrant sequestering the venire during voir dire. It is important to note that the trial court did not interfere with counsel's examination of the prospective jurors, either individually or collectively. Absent such a showing of special circumstances, the trial court's decision not to sequester the venire during voir dire was not an abuse of discretion.
These assignments of error lack merit.

*427 ASSIGNMENT OF ERROR NO. 16
By this assignment of error defendant contends that the trial court erred in denying defense counsel's motion for access to defendant prior to trial. Defense counsel filed this motion on October 16, 1980, four days prior to trial. In his motion defense counsel argued that the defendant had been in New Orleans, Louisiana, in the custody of the United States Government, since his return to this state from Arkansas. The hearing on the motion was held on October 16, 1980. Defense counsel argues in brief that it took over four and one-half hours of wasted travel time for each visit to the defendant. Defense counsel does admit, however, that the trial judge ordered that he be granted access to the defendant after each court appearance prior to defendant being transported back to New Orleans.
The state argues that the trial court did everything possible to allow defense counsel access to defendant while he was in Washington Parish. It argues that the trial court ruled that the defendant could not be housed in the Washington Parish facility because that facility was condemned by federal court order. The state also notes that the trial judge ruled that counsel for the defendant would have the opportunity to meet with his client after each court appearance, prior to his return to New Orleans.
It appears that defense counsel's only problem with the fact that the defendant was in federal custody in New Orleans was the "wasted travel time." Under the circumstances surrounding the trial and the fact that the defendant was in federal custody, defense counsel's argument is meritless. Counsel does not urge that he could not adequately prepare for trial, but only that the trip back and forth was an inconvenience.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 18
By this assignment defendant contends that the trial court erred in denying his motion to suppress the blouse of the alleged victim, or in the alternative, to grant a continuance to prepare for trial. During his opening statement, the prosecutor informed the jury that the blouse of the victim had been found and from its condition they would be able to see that it was torn off of her. Defense counsel objected and the jury was retired. Defense counsel then argued that the state had answered his motion for discovery stating that the blouse could not be found and had only informed him of its existence the morning of the trial. The prosecutor argued that he had tried to contact defense counsel to inform him that the blouse had been found, but that he did not return his call. The prosecutor further argued that he informed defense counsel of the existence of the blouse well in advance of voir dire. The trial judge stated that he did not believe there was a significant element of surprise as far as the blouse was concerned. He then denied the motion for a continuance and the motion to suppress. Defense counsel immediately objected to the trial court's ruling.
The state's failure to comply with discovery procedures which results in prejudice to the defendant constitutes reversible error. State v. Davis, supra; State v. Meshell, 392 So.2d 433 (La.1980). However, such a failure does not automatically require a reversal. This court will examine the circumstances to determine whether the defendant was actually prejudiced by the nondisclosure. State v. Davis, supra; State v. Strickland, 398 So.2d 1062 (La.1981).
In the instant case, defendant has failed to show that nondisclosure until the day of the trial was prejudicial. Nor did defendant use due diligence when the information was given to him. According to both the state and defense counsel, the prosecutor informed him of the evidence the day before the prosecutor mentioned the evidence. Yet, defense counsel filed no objection or motion for continuance. Rather, he waited until after the prosecutor concluded his opening statement and objected in the presence of the jury.
Because defense counsel failed to notify the court or seek to examine the blouse *428 prior to trial, the state's action in giving counsel late notice of its existence is deemed harmless.
This assignment of error lacks merit.

ASSIGNMENT OF ERRORS NO. 19 AND 20
By this assignment defendant contends that the trial court erred in refusing to instruct the jury during closing argument by the state as to the actual statement made by a witness and to grant a mistrial because of the prosecutor's misquotation of the witness's statement. During the trial, the female victim of an unrelated charge of aggravated rape and aggravated kidnapping, testified that defendant made the following statement to her while she was abducted:
"He said that he had a girlfriend before me and that when it was out of his control, she was raped and cut in the throat from ear to ear, just left lying there to die..."
During closing argument the prosecutor stated:
"What else does (name omitted) tell us? She says, `While I was with them, they called me their girlfriend and they referred to me as `Blondie' and what does she say that Joe Vaccaro bragged to her about? `When my last girlfriend got out of control, we raped her and cut her throat from ear to ear and left her in the woods.'"
Defense counsel immediately objected to the statement. A bench conference was held out of the presence of the jury. Defense counsel argued that the court should grant a mistrial on the prosecutor's misrepresentation of the witness' statement, or in the alternative, the court should properly instruct the jury on the witness' actual statement. The trial court denied the motions.
The trial court's denial of these motions does not constitute reversible error. The prosecutor's remarks, while misstating the witness' testimony, can be seen as his conclusions of the evidence presented as a whole, including defendant's post arrest confession to the authorities, and not as an effort made in bad faith to turn the evidence in the state's favor. Before this court will reverse a conviction on the basis of improper argument, it must be thoroughly convinced that the argument contributed to the verdict. State v. Carthan, 377 So.2d 308 (La.1979); State v. Heads, 370 So.2d 564 (La.1979); State v. Lee, 364 So.2d 1024 (La. 1978). The trial court properly charged the jury that the statements and arguments made by attorneys are not evidence, that the opening statements and closing arguments are not to be considered as evidence. Thus, it appears that any possible prejudice from the prosecutor's remark was cured by the trial judge's charge to the jury. Furthermore, the record reveals that the defense did not make an attempt to inform the jury of the precise statement in its closing argument.
These assignments of error lack merit.

ASSIGNMENTS OF ERROR NO. 21 AND 22
By these assignments defendant contends the trial court erred in: 1) refusing to grant defendant a judgment of acquittal for the failure of the state to prove every element of the crime of first degree murder, and 2) refusing to grant a new trial based on all the assignments urged on appeal and that the verdict was contrary to the law and the evidence.
Defendant made an oral motion for acquittal. However, the motion for acquittal is properly made only when the case is tried before a judge alone. Since there are no directed verdicts in jury trials in Louisiana, the essence of such a motion can be made only in trials by a judge alone, this court will treat the motion as a motion for a new trial. LSA-C.Cr.P. art. 851, et seq. See State v. Brown, 395 So.2d 1301 (La. 1981).
At the hearing on the motion for a new trial, defense counsel submitted the issue without argument, based on the written motion and the record. The trial court denied the motion. Defendant now argues *429 in brief that the state failed to prove that: 1) the defendant knowingly and intentionally participated in the infliction of mortal wounds to Faith Hathaway; 2) the murder victim had also been a victim of an aggravated rape; 3) defendant raped the victim; 4) the victim had been robbed; and 5) the murder victim was also the victim of an aggravated kidnapping.
Defendant's argument is without merit. LSA-R.S. 14:30 requires that only one aggravating circumstance be found to find the defendant guilty of first degree murder.
The record discloses that Faith Hathaway was abducted and taken to Fricke's Cave. By defendant's own admission, he held her hands down so Willie could cut her throat. That admission more than supports a finding of the requisite specific intent required by LSA-R.S. 14:30. Cf. State v. McAllister, 366 So.2d 1340 (La.1978). Defendant also admitted that he had a knife. The trial judge correctly charged the jury under applicable law involving principals of a crime. Moreover, the victim of the other crimes testified that the defendant told her that his other "girlfriend" had gotten her throat cut from ear to ear.
The standard to be applied in reviewing the sufficiency of evidence as enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. State v. Morgan, 389 So.2d 364 (La. 1980); State v. Harveston, 389 So.2d 63 (La.1980); State v. Hartman, 388 So.2d 688 (La.1980).
As only one aggravating circumstance need be proved to support a conviction of first degree murder, defense counsel's argument that the aggravating circumstances were not proven is without merit. Clearly, the state proved, by the defendant's own admission that Faith Hathaway was taken to Fricke's Cave, although she asked them to take her home. Expert testimony showed that the victim had forceable sex immediately prior to death and that "she was held in the prone position until she was dead, or nearly dead."
Viewing the evidence in a light most favorable to the prosecution, it appears that any rational trier of fact could have found beyond a reasonable doubt that the defendant was a principal to the crime of first degree murder.
These assignments of error lack merit.

ASSIGNMENTS OF ERRORS NOS. 8, 11 and 12
We have carefully reviewed assignments of error Numbers 8, 11 and 12. We find that none of these assignments of error present reversible error, nor do any involve legal issues not governed by clearly established principles of law. We find these assignments to be without merit. See State v. Brown, 371 So.2d 746 (La.1979).

ASSIGNMENT OF ERROR NO. 23
By this assignment of error defendant asserts that the conviction should be reversed because of any error patent on the fact of the record. We have thoroughly reviewed the record and find no errors patent.
This assignment of error lacks merit.
For the foregoing reasons, the conviction and sentence of the defendant, Joseph Vaccaro, are affirmed.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
I concur in result as to Assignment No. 13. The decision in State v. Redic, above, did not hold or suggest that the admission of an involuntary statement could ever be harmless error. Nevertheless, the facts surrounding the making of the statement to the female witness clearly establish that the statement was voluntary and was properly admitted as reliable evidence.
*430 Defendant complained that he was not allowed at the motion to suppress to introduce evidence that he was intoxicated when he made the statement. In my opinion, such evidence (except possibly in unusual circumstances not present here) would have no significant bearing on the admissibility of this particular statement, since intoxication should affect only the validity of the waiver of rights protected by Miranda and La.Const. Art. I, § 13 (1974), and not the voluntariness of the statement.[1]
If defendant's statement had been made in a police custodial situation, the state would have been required to prove at the motion to suppress that defendant knowingly and intelligently waived his right against self-incrimination, and the fact of intoxication may have had a bearing on defendant's capacity to make a knowing waiver.[2] But since defendant's statement in this case was made in a noncustodial situation to a private citizen without interrogation (and no issue is raised regarding defendant's sanity), it was only necessary for the state to prove that defendant spoke without external compulsion.[3] Compare State v. Glover, 343 So.2d 118 (La.1977). Therefore, the mere fact of defendant's drunkenness was not relevant to the determination of the statement's admissibility, which was the only issue at the motion to suppress. The fact of drunkenness does have a bearing on the reliability and the evidentiary weight (as opposed to the admissibility) of the statement, but defendant was not denied the right to present any such evidence at trial.
Because the female witness' testimony at the motion to suppress established beyond a reasonable doubt that defendant's statement to her was voluntary, whether or not he was intoxicated, the motion to suppress the statement was properly denied. Accordingly, the trial judge properly excluded evidence of drunkenness at the motion to suppress.
NOTES
[*] Judges Chiasson, Edwards and Lear of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon, Justices Marcus, Blanche and Lemmon.
[1] I realize that this court has in most cases analyzed the question of intoxication at the time of the giving of a statement in terms of "voluntariness". See State v. Meredith, 400 So.2d 580 (La.1981); State v. Bias, 352 So.2d 1011 (La.1977); State v. Berry, 50 La.Ann. 1309, 24 So. 329 (1899). This court has in cases, such as State v. Rankin, 357 So.2d 803 (La.1978), stated that the voluntary nature of a confession is vitiated "only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying." 357 So.2d at 804. In Rankin, the court suppressed a custodial confession given to police, because the evidence showed that defendant was "intoxicated and disoriented, confused and irrational" when he was warned of and purportedly waived his Miranda rights prior to interrogation. In my opinion, the real issue in Rankin was the validity of the waiver and not the voluntariness of the confession.
[2] For an excellent discussion of the distinction between the "waiver standard" and the "voluntariness standard", see Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
[3] We are not presented here with a claim of "involuntary intoxication".