438 So.2d 1156 (1983)
STATE of Louisiana
v.
James COTTEN.
No. 83-KJ-0012.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
*1158 Ossie Brown, Dist. Atty., Baton Rouge, by Glen Petersen, Asst. Dist. Atty., for plaintiff-appellee.
Nathan Fisher and John Di Giulio, Baton Rouge, for defendant-appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
The defendant James Cotten was charged in the same information in separate counts with attempted armed robbery in violation of LSA-R.S. 14:27 and 14:64 and attempted first degree murder in violation of LSA-R.S. 14:27 and 14:30(1). A jury returned a verdict of guilty on both counts. Defendant received concurrent sentences of forty-nine and one-half years at hard labor and fifty years at hard labor on each respective count, each sentence being the maximum allowed by law. Alleging fourteen Assignments of Error, defendant appeals his conviction and sentences.
Defendant neither briefed nor argued Assignments of Error Nos. 1, 3, 5, 6, 7, 8 and 13. They are considered abandoned. State v. Vanderhoff, 415 So.2d 190 (La. 1982); Uniform Rules of the Courts of Appeal, Rule 2-12.4. Defendant in his brief consolidated Assignments of Error Nos. 9, 10, 11 and 12 for the purposes of argument since they all involve the denial of the motion for mistrial.

FACTS
At approximately 9:30 on the night of November 26, 1981Thanksgiving Day James Cotten, age 17, and Alfred Newman, 16, approached the car of Ms. Jeri Gremillion in the parking lot of the apartment complex where she lived. Cotten and Newman, along with two others waiting for them in a car around the corner, were looking to make a "hustle," that is, to commit a robbery in order to get some money to go to New Orleans later that night. Armed with a .22 caliber pistol, Newman demanded that Ms. Gremillion give them all of her money. She told them that she did not have any but threw her purse out of the window of the car anyway. At that point, Cotten, saying "Give me that gun, I'll shoot that bitch," grabbed the gun from Newman's hands and shot Ms. Gremillion in the face.
Cotten and Newman were arrested a few days later. Newman ultimately was sentenced as a juvenile to "juvenile life." Cotten was charged with attempted first degree murder and attempted armed robbery.

*1159 ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial judge committed reversible error in denying his motion to suppress an allegedly involuntary taped statement given by the defendant to Detectives Dupuy and Evans, the arresting officers. Specifically, defendant contends that Detective Dupuy's questioning about a prior unrelated robbery and the showing of a photograph of a young woman whose disappearance had received wide-spread publicity constituted impermissible intimidation and coercion.
The record reveals that Detectives Dupuy and Evans arrested defendant at his home at 1:15 a.m. on December 5, 1981, where he was orally advised of his Miranda rights. After transporting the defendant downtown for questioning, Dupuy again advised the defendant of his rights by reading him a "Rights of Arrestee" preprinted rights and waiver form, containing the question, "Do you understand what I have just read to you?" Defendant affirmatively answered the question read to him and initialed the box labeled "Yes." Defendant was advised of his rights a third time at the start of the taped statement which began at 1:45 a.m., 30 minutes after the arrest. The interrogation lasted seven minutes ending at 1:53 a.m.
According to State v. Vaccaro, 411 So.2d 415 on page 423 (La.1981):
The law is clear that before a confession can be introduced into evidence the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-C.Cr.P. art. 703(C); LSA-R.S. 15:451; State v. Dison, 396 So.2d 1254 (La.1981); State v. Bell, 395 So.2d 805 (La.1981); State v. Haynie, 395 So.2d 669 (La.1981). The admission of a confession in the first instance is a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are unsupported by the evidence. See State v. Dison, supra, State v. Napier, 385 So.2d 776 (La.1980); State v. Jackson, 381 So.2d 485 (La.1980). This court has held that the state must rebut specific testimony introduced by the defendant concerning factual circumstances which indicate coercive measures or intimidation. State v. Dison, supra; State v. Franklin, 381 So.2d 826 (La. 1980); State v. Davis, 380 So.2d 607 (La. 1980).
At the hearing on the motion to suppress, Detective Dupuy, whose testimony was fully corroborated by Detective Evans, stated affirmatively that neither he nor Detective Evans in any way threatened, harassed or intimidated the defendant or made any promises respecting the prosecution of the charges against the defendant. On cross-examination, Dupuy explained that his purpose in questioning the defendant about the Delmont Pastries robbery and the missing girl was to obtain information that could be passed on to the armed robbery division. He affirmatively stated that he did not encourage the defendant to be honest but only to tell the truth.
On direct examination, defendant confirmed Dupuy's testimony that the questions about the robbery and the missing girl were informational only. He testified that he was only "scared a little" by the question concerning the other robbery, his "impression" being that he would be charged with that crime.[1] On cross-examination, he admitted *1160 that he was given his Miranda rights three times, that he signed the written waiver of his rights and initialed the box labeled "Yes," and that he fully understood the questions he was being asked.
In the instant case, specific allegations of police misconduct were not only sufficiently rebutted by the state's evidence, they were completely negatived by the defendant's own testimony. That the trial judge chose to believe the testimony of the arresting officers rather than that of the defendant is not an abuse of discretion. Under the circumstances of this case, the trial court correctly denied the motion to suppress.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends that his prosecution and subsequent conviction for attempted first degree murder and attempted armed robbery, the underlying felony and the sole aggravating circumstance, violated the prohibition against double jeopardy contained in the Fifth Amendment of the United States Constitution and in Article I, § 15 of the Louisiana Constitution (1974). Article 596 of the Louisiana Code of Criminal Procedure is the statute implementing the constitutional prohibition against double jeopardy.[2]
The concept of double jeopardy, under both the federal and the state constitutions, embodies the dual purpose of preventing both multiple punishments and multiple convictions for a single criminal wrong. See Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); State v. Doughty, 379 So.2d 1088 (La.1980). Thus, every double jeopardy analysis must begin with the inquiry into whether a single offense or several offenses are involved.
The Louisiana Supreme Court has adopted the "same evidence" test to determine the identity of offenses. This test holds that two offenses are the same for double jeopardy purposes if the same evidence is required for the conviction of each offense. If one offense requires proof of additional facts which the other does not, the accused may be tried and convicted on both offenses unless the gravamen of the second offense is essentially included within the offense for which first tried, in which case the second prosecution is barred because of double jeopardy. State v. Solomon, 379 So.2d 1078, 1979 (La.1980).
In applying this test, the Louisiana Supreme Court has held that as a general rule double jeopardy bars separate punishment or subsequent prosecution of lesser included offenses once the defendant is convicted of the greater offense. See State v. Tompkins, 403 So.2d 644, 649, n. 6 (La.1981). Thus, conviction of second degree murder precludes further prosecution and conviction for attempted armed robbery, the enumerated felony. State v. Stewart, 400 So.2d 633 (La.1981); State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La.1974). The reasoning of State v. Stewart, supra, is dispositive:
Once convicted of attempted `felony murder,' the defendant is punished for the felony which he was perpetrating at the time of the attempted murder and he *1161 cannot be punished a second time for the same offense. (citation omitted.)
400 So.2d 633, 635, n. 4 (La.1981).
In the instant case, on the strength of the same evidence adduced at trial, defendant was convicted of attempted first degree murder and attempted armed robbery, the enumerated felony. To uphold the conviction of attempted armed robbery would subject the defendant to double punishment for the same offense. "Where multiple punishment has been erroneously imposed the proper appellate procedure is to eliminate the effect of the less severely punishable offense." State v. Doughty, 379 So.2d 1088, 1089 (La.1981). Therefore, the conviction of attempted armed robbery is reversed and vacated. The conviction for attempted first degree murder remains unaffected under this assignment.

ASSIGNMENT OF ERROR NO. 9
Though consolidated with Assignments of Error Nos. 10, 11 and 12, Assignment of Error No. 9 is more properly discussed separately.
Under this assignment, defendant contends that the trial judge erred in denying defendant's motion for mistrial. The basis for the defendant's objection at trial arose when the prosecution asked the defendant on cross-examination, "How many times did you try to make a hussle [sic] that night?" The defendant immediately objected on the ground that the prosecution was attempting to elicit inadmissible evidence of other crimes in violation of LSA-R.S. 15:495.[3]
Article 770 of the Code of Criminal Procedure mandates a mistrial when a prosecutor, directly or indirectly, remarks or comments upon "another crime committed or alleged to have been committed by the defendant as to which evidence is inadmissible." However, the Louisiana Supreme Court has held that failure to grant a mistrial is not reversible error when the question asked is purely "interrogatory," State v. Anderson, 358 So.2d 276 (La.1978); State v. Hatch, 305 So.2d 497 (La.1974), or where the question asked results in "harmless error." State v. Huizar, 414 So.2d 741 (La. 1982).
A purely "interrogatory" question is one which calls for inadmissible evidence, but which does not present any facts allegedly constituting the other crime to the jury. Assertive questions are those which place before the jury the details concerning the other crime. State v. Anderson, 358 So.2d 276, 279 (La.1978).[4]
In State v. Huizar, supra, the prosecutor had asked the defendant an impermissible question about a prior arrest. Before the defendant could answer, the prosecution withdrew his question and rephrased it. The court found the error to be harmless.[5] *1162 Likewise, in State v. Anderson, supra, the court noted that defendant's objection was sustained, and the defendant was not required to answer.
In the instant case, defendant's counsel objected before the defendant answered the question and asked that the jury be removed. Counsel then moved for a mistrial, and in the alternative requested an admonition be given the jury. The prosecutor agreed to withdraw his question. The trial court sustained the objection and admonished the jury after they returned to disregard the prosecutor's last question.
Under these circumstances, the trial court correctly denied defendant's motion for mistrial. We find that the question at issue was purely interrogatory since it did not lay before the jury any details relating to the alleged other crime. In the alternative, any error committed by the inquiry was harmless since the defendant's objection was sustained before the defendant was required to answer the question. This assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 10, 11 AND 12
Under these assignments, defendant argues three errors requiring reversal of the trial court's denial of defendant's motion for mistrial, namely, that the state's breach of its continuing duty to disclose discoverable evidence, including the defendant's RAP sheet, prejudiced the defendant by impairing his right to make out a defense; that the state's reference to a prior arrest for attempted burglary which never actually occurred resulted in prejudice severely damaging defendant's credibility; and that the state's reference to the crime of unauthorized use of a movable as a "car theft" also prejudiced the defendant to the extent that a mistrial was mandated.
A review of the record reveals that the defendant filed a pretrial motion for discovery pursuant to LSA-C.Cr.P. art. 717, requesting a copy of any record of defendant's prior criminal arrests or convictions. In response to defendant's discovery request, the state responded that there were "none available."
At trial the defense counsel questioned the defendant on direct examination about his previous arrest record. Defendant responded that he had never been arrested before.[6] On cross-examination the defendant responded to the prosecution's questions about his prior arrests, "Well, I have been arrested for driving without a license and use of an unauthorized movable vehicle." Defense counsel made no objection at this time. Several questions later, still during cross-examination, the prosecution returned to the subject of prior arrests[7] and asserted that the defendant had been arrested a third time for attempted burglary.[8] Defendant moved to retire the jury and requested a recess in order to substantiate this third arrest. During the recess, it was determined that the defendant was never actually arrested for attempted burglary. He had instead been detained and taken to Family Court for consultation with a Family Court counselor. At this point, defendant moved for a mistrial on the grounds set forth above, and alternatively requested an admonition.
Initially, we note that references to arrests and indictments cannot be used even for the purpose of impeachment, and that a mere admonition to the jury is insufficient to cure any such remark. State v. Gaspard, *1163 301 So.2d 344 (La.1974) (on rehearing); LSA-R.S. 15:495; LSA-C.Cr.P. art. 770. However, the state is not precluded from contradicting the defendant's testimony given on direct examination upon an issue which the defendant himself has brought into the case. State v. Constantine, 364 So.2d 1011 (La.1978); State v. Howard, 230 La. 327, 88 So.2d 387 (La.1956); See also State v. Barrett, 350 So.2d 664 (La.1977).
Because the defendant "opened up" the issue of his arrest record, evidence pertaining to such arrests is clearly admissible on the question of defendant's credibility. Questions posed by the prosecution about such arrests do not constitute impermissible references to other crimes. Therefore, C.Cr.P. art. 770, mandating mistrial, is inapplicable.
The record further reveals that defendant's counsel had represented the defendant on his arraignment for the unauthorized use of a movable two weeks prior to the trial for attempted first degree murder, but due to her heavy work load had forgotten that representation. The prosecution maintains that he had orally discussed that arrest with the defendant's counsel on several occasions during the two weeks preceding the trial in question. Since the prosecution maintained at trial that he did not and never had a RAP sheet in his file, we think it obvious that the state has no obligation to provide that which it does not have in its possession. See State v. White, 430 So.2d 174 (La.App. 2nd Cir.1983).
We note our recent holding in State v. Brooks, 434 So.2d 1171 (La.App. 1st Cir. 1983), that any amendment pursuant to C.Cr.P. art. 717, after notification to the court and the defendant under C.Cr.P. art. 729.3, must be in writing, but do not decide the issue of whether defendant's actual knowledge of a prior arrest relieves the state of its continuing discovery obligation. When the defendant had admitted to the arrest for the unauthorized use of a movable on cross-examination, the defense counsel failed to raise any objection at that time. Since her objection was not timely, the only question properly before us on appeal is whether the state's use of the defendant's prior "arrest" for attempted burglary without notification to the defendant was prejudicial. See State v. Johnson, 389 So.2d 372 (La.1980); LSA-C.Cr.P. art. 841.
The state's failure to comply with discovery procedures[9] that results in prejudice to the defendant constitutes reversible error. However, such a failure does not automatically require a reversal. This court will examine the circumstances to determine whether the defendant was actually prejudiced by the nondisclosure. State v. Vaccaro, 411 So.2d 415, 427 (La.1982).
In his brief, defendant placed considerable reliance on State v. Meshell, 392 So.2d 433 (La.1980), in which the court held that the use of the defendant's RAP sheet, revealing a prior conviction for a similar offense, at the close of the state's case, without prior notification to the defendant, precluded *1164 the defendant from taking the stand in his own defense and thereby effectively denied his right to make out a defense. Meshell is distinguishable from the instant case. First, as noted above, the prosecution never had in its possession a RAP sheet. Second, defense counsel conceded at trial that she would have put the defendant on the stand even had she known about the defendant's prior arrests, but contends that she would not have asked any questions about his prior arrest record.
In light of the fact that the jury had already heard the defendant's taped confession and that the victim had positively identified the defendant as the man who shot her, we fail to see how a decision whether or not to ask defendant a single question about his prior arrests alone impaired the defendant's ability to make out a defense, or led to prejudicial damage to his credibility. Moreover, the trial court sustained the defendant's objection, instructed the state to discontinue that line of questioning, and admonished the jury to disregard any questions about the alleged arrest for attempted burglary. Under these circumstances, we find no prejudice to the defendant. Therefore, the motion for mistrial was properly denied.
The reference by the prosecution to the "car theft" arose out of the following question, "And youyou thought car theft, unauthorized usewas a traffic offense?" This was simply a mischaracterization of an arrest which was properly before the jury, and not a reference to another crime the evidence of which was inadmissible. Additionally, since the trial court sustained the objection before the defendant had answered the question and admonished the jury to disregard any reference to the arrest as one for car theft, we find no prejudice to the defendant. These assignments are without merit.

ASSIGNMENT OF ERROR NO. 14
Defendant contends that the sentence imposed by the trial court was excessive. Defendant was sentenced to fifty years at hard labor for attempted first degree murder, the maximum sentence allowed by law.
In State v. Knox, 425 So.2d 707, 708 (La. 1982), the Louisiana Supreme Court stated:
It is now settled that a trial judge's sentencing reasons in compliance with La. C.Cr.P. Art. 894.1 provide an essential aid to this Court's review of an excessiveness claim under La. Const. Art. I § 20. State v. Trahan, 412 So.2d 1294, 1297 (La.1982); State v. Spencer, 374 So.2d 1195 (La. 1979); State v. Cox, 369 So.2d 118 (La. 1979). The record left of sentencing should therefore indicate that the trial court considered not only the seriousness of the offense and the past record of the defendant, but also "defendant's personal history (age, mental status, dependents, family ties, work record, mental, emotional and physical health) and his ... potential for rehabilitation." State v. Molinet, 393 So.2d 721, 722 (La.1981); see also, State v. Jones, 398 So.2d 1049 (La.1981); State v. Jackson, 360 So.2d 842 (La.1978). In addition, Art. 894.1(C) requires the trial court to state the factual basis for its sentencing conclusions. As set forth in State v. Williams, 397 So.2d 1287, 1291 (La.1981), this requirement "... in most cases is crucial to this Court when called upon to execute its constitutional function to review a sentence complained of as excessive."
Accordingly, our review of the record reveals that among the factors considered by the trial court are (1) all mitigating facts and circumstances contained in letters written by friends and relatives of the defendant, which letters form a part of the record and were delivered to the court for his consideration and sentencing; (2) the necessity of confinement due to an undue risk that during the period of suspended sentence or probation the defendant would commit another crime; (3) the defendant's previous involvement in an attempted burglary for which he was counselled and warned and which occurred only two days prior to the instant offenses, as well as his violations of simple criminal damage to property, unauthorized use of a movable, *1165 and driving without a license; (4) the necessity of correctional treatment or custodial environment most effectively provided by his commitment to an institution; (5) the defendant's own reasons for committing the crime as simply needing the money to go to New Orleans for entertainment; (6) the fact that a lesser sentence would deprecate the seriousness of the defendant's crime; (7) the helplessness of the victim and the danger to her life and to her unborn child's life as a result of defendant's criminal activity; and (8) the recommendation of the sentence by the Division of Probation and Parole as well as by the District Attorney.
Thus, the record shows that the trial court complied with the provisions of C.Cr.P. art. 894.1 in every material way. The question remains whether the sentence, though within statutory limits, is constitutionally excessive.
The trial judge has wide discretion in the imposition of a sentence within statutory limits and that sentence should not be set aside as excessive in the absence of manifest abuse of that wide discretion. State v. Sepulvado, 367 So.2d 762 (La.1979).
A sentence is excessive when it is grossly out of proportion to the severity of the offense, or when nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Roberts, 427 So.2d 1300, 1304 (La. App. 2nd Cir.1983).
The defendant was convicted by a jury of his peers of attempting to commit the only capital offense under Louisiana law, first degree murder, during the attempted perpetration of armed robbery. We cannot say that the sentence imposed was grossly out of proportion to the severity of the offense, nor so disproportionate as to shock our conscience. Moreover, the defendant displayed hostile unconcern for the lives of the victim and her unborn child. Just before he shot his pregnant victim in the face at point blank range, the defendant said, "Give me that gun, I'll shoot that bitch." While the trial court is "obliged to accord some weight to mitigating circumstances, such as youth and first offender's status," State v. Knox, 425 So.2d at 708, we cannot say that the trial court manifestly abused its discretion by imposing the maximum penalty. We do not find the sentence to be excessive. This assignment is without merit.
For the reasons assigned, defendant's conviction for attempted armed robbery is reversed and vacated; defendant's conviction and sentence for attempted first degree murder are affirmed.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
NOTES
[1] On page 113 of the record defendant responded to defense counsel's question on direct, "And then he had throwed out this picture and showed me a picturea lady and asked me if I ever saw her before, and I told him, `No.' And then he said, `Well, this is Judge Parker's niece.' I believe that's what he said. Well, then he said she was kidnapped off the lake and asked me if I knew anybody who did it or did I know anything about it, and I told him `No I didn't.'" Defendant stated that there was no other discussion about the Parker girl until after the taping began.

As to the robbery question, pages 118 and 119 of the record contains the following:
Q Okay. All this discussion of the robbery of Delmont Pastries had happened before you gave your statement?
A Yes.
Q What does that mean to you?
A It didn't mean anything. It just scared me a little.
Q How did it scare you? What did you think was going to happen?
A I thought he was going to try to say that I did it.
Q Did he ever tell you directly that he would pin it on you if you didn't make a statement?
A No, he said nothing like that.
Q But you got that impression? Is that what you're saying?
A Yeah.
[2] LSA-C.Cr.P. art. 596 provides:

Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
[3] LSA-R.S. 15:495 reads in pertinent part:

Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness ... and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
Defendant's additional argument that Prieur notice was also required is meritless. Prieur notice is required only when evidence of other crimes is offered to prove system, knowledge or intent under LSA-R.S. 15:445, 446, which is not the case here.
[4] In Anderson the question asked was, "Were you arrested for theft since then?" The court found this question to be a pure question (i.e. an interrrogatory question) as it did not call for any details about the prior arrest.
[5] "The error, if any, in the State's inquiry is harmless. The question regarding arrest was never answered." Id. 414 So.2d at 749.

We note the possible application of State v. Gibson, 391 So.2d 421 (La.1980), wherein the Louisiana Supreme Court expressly adopted the federal "harmless error test" to be applied to evidence admitted in alleged violation of constitutional rights. That test is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction and that the court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Id. at 428. The Supreme Court also indicated in Gibson that this test will be useful in cases involving only errors of state procedure or state law. Louisiana's statutory harmless error rule is found in the Code of Criminal Procedure article 921, which requires reversal only when substantial rights of the accused have been affected, a somewhat lesser standard. Nonetheless, several Supreme Court cases decided since Gibson have applied the "overwhelming evidence" test, explicitly rejected by the Supreme Court, in determining when the error is harmless. See State v. Banks, 428 So.2d 544, 546, n. 2 (La. App. 4th Cir.1983) for a citation of those cases.
[6] At the hearing on the motion to suppress his confession, the defendant had testified that he had been arrested previously for driving without a license.
[7] The prosecution returned to the subject of arrests after defendant's previous motion for mistrial, which formed the basis of defendant's Assignment of Error No. 9, had been argued and ruled upon.
[8] The record reveals that the prosecution had received information regarding this third arrest two hours before the question was asked.
[9] LSA-C.Cr.P. art. 717 provides:

Upon motion of the defendant, the court shall order the district attorney or the appropriate law enforcement agency to furnish to defendant a copy of any record of his criminal arrests and convictions that is in their possession or custody.
LSA-C.Cr.P. art. 729.3 provides:
If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
LSA-C.Cr.P. art. 729.5(A) provides:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.