464 So.2d 1040 (1985)
STATE of Louisiana
v.
Steve MUNZY.
No. KA 84 0949.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
Writ Denied May 24, 1985.
*1043 Ossie Brown, Dist. Atty. by Brenda Creswell, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Kathleen S. Richey, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
Defendant Steve Munzy was charged by bill of information with armed robbery, a violation of La.R.S. 14:64. Defendant pled not guilty and following a trial by jury was found guilty as charged. The trial court sentenced defendant to 25 years imprisonment at hard labor in the custody of the Secretary of the Department of Corrections, without benefit of probation, parole or suspension of sentence. Defendant was also ordered to pay court costs in the amount of $170.05. Defendant has appealed his conviction and sentence citing fourteen assignments of error.[1]

FACTS
On the morning of June 5, 1982, defendant entered Dale's Rexall Pharmacy on Highland Road in Baton Rouge. Amy Thompson, a store clerk, was waiting on a female customer. Defendant ordered the clerk and the customer into the back of the store where the pharmacy department was located. Ms. Thompson saw a pistol tucked into defendant's pants. Both women complied with defendant's order. Defendant brandished the pistol and informed the store clerk he was a drug addict and wanted amphetamines. As customers entered the pharmacy, defendant would go to the front of the store and order them at gun point to proceed to the pharmacy department. Defendant ordered Ms. Thompson to get drugs out of the pharmacy safe. However, she did not have the combination and was unable to comply with his demand. Defendant began searching through the drugs on the shelves. He read the labels exclaiming, "This isn't it!" Defendant also searched through the drugs in the pharmacy refrigerator.
The store clerk was able to push the silent alarm while defendant was distracted by the entry of another customer. Defendant threatened to shoot anyone if they spoke. While defendant was in the back of the store, Ms. Thompson observed him picking up a starter pack of insulin hypodermic syringes.
Marge Wilson, another pharmacy employee, arrived for work and asked what was going on. Defendant ordered her to go to the back of the store but she refused. Ms. Wilson turned, ran out of the store and screamed for help. Defendant chased after Ms. Wilson. Gregory Gunn was outside the pharmacy when defendant came out. Defendant put his pistol to Gunn's throat and said he was being taken hostage. When Gunn would not move, defendant threatened to shoot him.
The police pulled into the shopping center parking lot as defendant was coming *1044 out of the pharmacy. Police Officer Bart Thompson observed defendant waving a small handgun and ordered him to drop the weapon. Defendant complied with the officer's request and was placed under arrest. Officer Thompson seized a loaded .25 caliber automatic pistol from defendant. The officer also found a package of hypodermic syringes, matching those defendant was seen taking from the pharmacy. The syringes were hidden under defendant's cowboy hat.

ASSIGNMENT OF ERROR NUMBER 2
Defendant contends the trial court erred by not allowing defendant twelve peremptory challenges. Defendant's argument is two-fold. He challenges the constitutionality of Act 495 of the 1983 Louisiana legislature as an arbitrary reduction of the number of peremptory challenges, thereby depriving defendant of a full and fair voir dire and impartial jury.[2] Defendant's second challenge asserts it is improper to apply Act 495 of 1983 retroactively. Neither of defendant's contentions has merit.
A general principle of judicial interpretation of a state constitution is that, unlike the federal constitution, a state charter's provisions are not grants of power but instead are limitations on the otherwise plenary power of a state exercised through its legislature. In its exercise of the entire legislative power of the state, the legislature may enact any legislation the state constitution does not prohibit. Board of Elementary and Secondary Ed. v. Nix, 347 So.2d 147, 153 (La.1977).
There is no federal constitutional right to peremptory challenges. State v. Bennett, 454 So.2d 1165 (La.App. 1st Cir. 1984), writ denied, 460 So.2d 604 (La.1984). In Bennett, at page 1174, this court affirmed the constitutionality of Act 495 of 1983 stating:
"Article I, Section 17 of the Louisiana Constitution of 1974 provides, in pertinent part, as follows: `The accused shall have the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law.' Thus, although the Louisiana Constitution grants to a criminal defendant a right to challenge jurors peremptorily, it does not give him a right to a specified number of challengesthe discretion to fix the number has been given to the legislative branch of State government. The legislature's authority to fix the number of peremptory challenges has been exercised in La.C.Cr.P. art. 799. Prior to Act 495 of 1983, Article 799 provided for twelve peremptory challenges for a defendant in trials of offenses punishable by death or necessarily by imprisonment at hard labor. Act 495 reduced that number to eight. This reduction is within the authority granted by the Louisiana Constitution to the legislature."
In accordance with this court's holding in Bennett, supra, defendant's contention that Act 495 of 1983 is unconstitutional lacks merit.
Act 495 of 1983 became effective on August 30, 1983. Defendant contends the Act is substantive. Thus, because defendant was arrested and indicted prior to the effective date of the Act, he contends it should not apply retroactively to his trial. Defendant's trial commenced on February 1, 1984.
Ex post facto laws are prohibited by both the Federal and Louisiana Constitutions. U.S. Const. art. I § 10; La. Const. art. I, § 23. State v. Sepulvado, 342 So.2d 630 (La.1977). An ex post facto law is a law which is passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed. A law is considered ex post facto which is enacted after the offense was committed and which alters the situation of the accused to his disadvantage. Kring v. State, 107 U.S. *1045 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883); State v. Bennett, at p. 1175.
In Bennett this court held Act 495 of 1983 did not constitute an ex post facto law when applied to the trial of a defendant who committed an offense prior to the effective date of the amendment. This court stated at page 1176:
"Although a criminal defendant has a constitutional right to challenge peremptorily, his right to a specific number of challenges is statutory. The reduction of the statutory number of peremptory challenges does not affect the nature of the crime, the authorized punishment or evidentiary rules. The statutory right to a specific number of peremptory challenges relates to the mode (procedure) utilized to determine guilt. As such, the applicability of Act 495 is determined by the time when the trial commences and not the time when the offense was committed. (Underscoring added.)
Defendant's trial commenced on February 1, 1984, after the effective date of Act 495 of 1983. As such, the trial court properly limited defendant and state to the use of eight peremptory challenges.
Defendant's second assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS 3, 4 AND 5
Defendant contends the trial court erred by overruling his challenges for cause of Mary Chappo, Richard Bartol and Hazel Rogillio. As to Ms. Chappo and Mr. Bartol, defendant contends their response during voir dire examination presented them unable to render a judgment according to law. Pertaining to Ms. Rogillio, he argues she was too closely tied to law enforcement personnel to render an impartial verdict.
Both the federal and state constitutions provide a defendant in a criminal prosecution the right to a trial by an impartial jury. U.S. Const.Amend. 6; La. Const. art. I, § 16; State v. Domino, 444 So.2d 268, 270 (La.App. 1st Cir.1983).
La.Code Crim.P. art. 797 provides in pertinent part:
"The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
* * * * * *
(4) The juror will not accept the law as given to him by the court;...."
Error is not committed by a trial court's refusal to dismiss a juror who expresses some reservation about accepting the law, when, after additional questioning by the trial court and the state, the juror assures the trial court he could apply the applicable law and give defendant a fair trial. State v. Williams, 458 So.2d 1315 (La.App. 1st Cir.1984). The determination of the qualifications of a juror is within the sound discretion of the trial court. Only when the exercise of such discretion is arbitrary or unreasonable, to the prejudicial injury of the defendant in obtaining a fair and impartial trial, will this court be warranted in setting aside a verdict. State v. Johnson, 324 So.2d 349 (La.1975).[3]
*1046 The ultimate responses of both Mr. Bartol and Ms. Chappo show they agreed to do their best to put aside their personal feelings and act as impartial jurors, applying the law, as given by the trial court, to the facts in a fair and impartial manner.
Initially Ms. Chappo and Mr. Bartol expressed reservations about their ability to accept the defense of intoxication. Mr. Bartol responded to defense counsel he would do his best to apply the law relative to the intoxication defense. He stated he had strong personal feelings about putting any faith into the efficacy of that particular law. In response to the state's questions, following an explanation of the defense, Mr. Bartol agreed he would consider the defense of intoxication if it were raised.
Ms. Chappo indicated her personal feelings might not allow her to apply the intoxication defense. The trial court then addressed the prospective jurors as to the intoxication defense. In response to the prosecutor's questions Mr. Bartol agreed he could listen to the testimony, consider the defense as explained by the court and apply the law to the facts. Ms. Chappo still expressed reservations and was further questioned by the trial court. Thereafter, the trial court asked Ms. Chappo if she would fairly consider the facts and apply the law in a fair and impartial manner. Ms. Chappo responded, "I will try. I will try to be fair."
As to Ms. Rogillio, defense counsel challenged her for cause because she was related to several law enforcement officers. Her deceased husband was a police officer; her son is a police officer; her uncle had retired from the police department.
In response to the state's questions, Ms. Rogillio unequivocally stated she would apply the law as given to the facts in reaching a verdict. Ms. Rogillio did not know either of the police officers who were to be called as witnesses. In response to the court's questioning, Ms. Rogillio stated she would not be unfairly influenced by a witness if that witness were a law enforcement officer.
While anyone associated with law enforcement duties must be closely scrutinized as a prospective juror, such association does not automatically disqualify that person. State v. Lewis, 391 So.2d 1156 (La.1980). Ms. Rogillio was questioned extensively about her ability to be a fair and impartial juror. Her answers establish the trial court did not abuse its discretion in denying defendant's challenge for cause.
Assignments of error numbers 3, 4 and 5 are without merit.

ASSIGNMENTS OF ERROR NUMBERS 7 AND 9
Defendant contends the trial court erred in allowing the State to introduce a gun clip and "Rights of Arrestee Form" into evidence. As a basis for exclusion defendant asserts both items were not listed in the state's answer to defendant's motion for discovery.
The state's failure to comply with discovery procedures does not automatically require a reversal. Prejudice to the defendant must be shown affirmatively. Therefore, our inquiry is initially whether a nondisclosure occurred and then whether defendant was actually prejudiced by that nondisclosure. State v. Cotten, 438 So.2d 1156 (La.App. 1st Cir.1983), writ denied, 444 So.2d 606 (La.1984).
Defendant's motion for discovery requested a description of all tangible objects in the possession, custody and control of the state. The state's answer listed a pistol, a pack of syringes and photographs of the scene. On the day of the trial, the state amended its answer to the motion for discovery to include the gun clip. Defense counsel made no objection at that time. At trial, defense counsel objected to the introduction of the clip of bullets into evidence. The state responded the loaded clip was introduced separately from the gun as a matter of safety. The trial court allowed the clip to be introduced. Defense counsel was aware, from the preliminary examination, *1047 the weapon in question was loaded. Officer Bart Thompson testified the gun clip was part of the weapon seized from defendant at the pharmacy.
Therefore, as to the gun clip, the defendant has failed to show the state did in fact fail to comply with the discovery requirements of La.Code Crim.P. art. 718. Defense counsel was aware the gun in question was a loaded weapon. The clip is an integral part of the weapon in question. The state's failure to itemize every removable part of the pistol does not necessarily constitute a failure to comply with discovery. Further, assuming this court found a non-compliance with La.Code Crim.P. art. 718, we find the circumstances do not exhibit defendant was prejudiced by such non-disclosure. There is no showing the defendant was misled and therefore altered his defense. No reversal is warranted by this assignment. State v. Vaccaro, 411 So.2d 415 (La.1982).
Our considerations are now turned to the references to and the introduction of the "Rights of Arrestee Form." Defendant's motion for discovery requested a description of any papers or documents in the state's possession, custody or control which were intended for use by the state as evidence at trial. Initially, the state responded no such papers or documents existed. Subsequently, on the day of trial, the state provided its "768 Notice to Defendant" indicating it would introduce all statements made by defendant at the time of his arrest, booking and incarceration. We find this failure by the state to timely notify the defendant of its intention to use the form and references thereto at trial to be a noncompliance with the right of discovery statutorily afforded to defendant. However, the failure to timely disclose a discoverable item will not, pursuant to the rationale expounded in Cotten, require a reversal of a criminal conviction without a showing of actual prejudice.
During the preliminary examination the existence of the "Rights of Arrestee Form" and the circumstances surrounding its signing were brought to the attention of defense counsel. Defendant contends this knowledge does not obviate the prejudicial impact of the form upon his defense. According to defendant, the introduction of the form was used to rebut his primary defense of intoxication. Therefore, because an aspersion was cast upon an integral element of his defense, prejudice arose.
This court is satisfied the defendant has failed to show nondisclosure was prejudicial in the above mentioned context. Sufficient evidence was introduced, independent of the references to and the introduction of the form, which conclusively support a finding by the jury the defendant was not intoxicated at the time his crime transpired. The store clerk testified the defendant did not appear to be under the influence of drugs or going through withdrawal. The defendant's intended hostage outside the Rexall testified the defendant appeared cognizant of his actions. Further, Officer Tony Parrino stated although defendant appeared weak, he seemed to understand when given his Miranda rights. Finally, this court notes the defendant had the clarity of mind to read through numerous drug labels on the pharmacy shelves and refrigerator in search of amphetamines.
Accordingly, assignments of error numbers 7 and 9 are without merit.

ASSIGNMENT OF ERROR NUMBER 14
Defendant contends the evidence presented is insufficient to support the verdict of guilty as to the charge of armed robbery.[4] Specifically, it is asserted the element of "theft" has not been established.
The standard of review established by La.Code Crim.P. art. 821 is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier *1048 of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. State v. Walker, 447 So.2d 54 (La.App. 1st Cir.1984).
The store clerk testified she saw the defendant remove the starter pack of insulin hypodermic syringes from the pharmacy shelf. The defendant was then noted to handle these syringes. The defendant remarked he was a drug addict. Upon arrest the police found a new starter pack of insulin hypodermic syringes beneath the defendant's hat. The presence and brandishing of a gun by the defendant are established conclusively by the record. Any rational trier of fact could have found the essential elements of an armed robbery were proven beyond a reasonable doubt. An inference can be drawn that the syringes handled by defendant after removal from the store shelf are the same syringes found by the police under defendant's hat.
Accordingly, defendant's fourteenth assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBERS 12 AND 13
Defendant has alleged the trial court erred by imposing an excessive sentence. Defendant has also alleged the trial court erred by failing to follow the guidelines set forth in La.Code Crim.P. art. 894.1.
Defendant argues the trial court failed to consider mitigating factors and overestimated the significance of aggravating factors. Defendant asserts the trial court did not address defendant's attempt to recover from drug abuse. Defendant argues the trial court failed to note defendant acted under strong provocation, i.e., drug addiction.
The trial court has wide discretion in the imposition of a sentence within statutory limits and that sentence should not be set aside as excessive in the absence of manifest abuse of that wide discretion. State v. Sepulvado, 367 So.2d 762 (La. 1979). A sentence is excessive when it is grossly out of proportion to the severity of the offense, or when it is nothing more than the needless and purposeless imposition of pain and suffering. Sepulvado, supra.
The record shows defendant entered Dale's Rexall Pharmacy with a loaded pistol. Defendant threatened the lives of several people in his attempt to rob the pharmacy of drugs. Defendant did, in fact, take syringes from the pharmacy. Defendant was convicted of armed robbery.
The maximum penalty for armed robbery is imprisonment at hard labor for not more than 99 years, without benefit of parole, probation or suspension of sentence. As well, the legislature has imposed a five year minimum sentence on those who commit armed robbery. La.R.S. 14:64 B. The trial court sentenced defendant to 25 years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The sentence in question is comfortably within statutory limits. Considering the circumstances surrounding the commission of this crime, the record evidences no abuse of the trial court's discretion in the imposition of this sentence.
During sentencing the trial court noted defendant's criminal record included at least twenty adult arrests. Defendant has been convicted for criminal trespass, possession and sale of LSD, D.W.I., aggravated burglary, simple drunk and issuing worthless checks. When imposing sentence, the trial court is not limited to a consideration of prior convictions in reviewing a defendant's prior criminal activity. State v. Marchese, 430 So.2d 1303, 1308 (La.App. 1st Cir.1983). The court noted during two previous probationary sentences defendant was arrested several times and showed no willingness to end his pursuit of a life of crime or use of illegal drugs. The trial court cited La.Code Crim.P. art. 894.1 and determined a lesser sentence would deprecate the seriousness of defendant's crime. Contrary to defendant's assertion, the trial court did note defendant admitted being under the influence of drugs at the time of the incident.
This court in State v. Danos, 444 So.2d 1269 (La.App. 1st Cir.1983), writ denied, *1049 445 So.2d 1235 (La.1984), ruled a sentence will not automatically be set aside for failure of the trial court to articulate those facts considered in imposing sentence, unless the record is inadequate or the record clearly indicates the sentence is excessive.
This record shows the trial court adequately considered applicable mitigating factors. The trial court is not required to cite every factor listed in La.Code Crim.P. art. 894.1, if the record reflects the trial court did give adequate consideration to the sentencing statute. State v. Marchese, supra. The record reflects defendant's sentence is not excessive. Furthermore, the trial court properly complied with the requirements of La.Code Crim.P. art. 894.1.
Accordingly, defendant's twelfth and thirteenth assignments of error are without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Defendant has raised 14 assignments of error. However, he has not briefed assignments of error numbers 1, 6, 7, 10 and 11. These five assignments of error are therefore considered abandoned. Uniform RulesCourts of Appeal; Rule 2-12.4.
[2] Act 495 of 1983 amended La.Code Crim.P. art. 799 limiting, from 12 to 8, the number of peremptory challenges for each side in trials of offenses punishable by death or necessarily by imprisonment at hard labor.
[3] La.Code Crim.P. art. 800 was amended in 1983 to state,

"A. A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection."
This seemingly does away with the additional requirement that before a defendant may prevail by raising as error a failure to dismiss a juror properly challenged for cause he must exhaust all his peremptory challenges. See La. Code Crim.P. art. 800 (as it appeared prior to its amendment by 1983 La.Acts, No. 181, § 1.) which read,
"A defendant cannot complain of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel."
[4] Armed robbery is defined by La.R.S. 14:64 as, "... the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."