STOKER, Judge.
On April 18, 1988 defendant-appellant, Joseph Bargeman, was charged by bill of information with simple burglary of an inhabited dwelling, a violation of LSA-R.S. 14:62.2. On September 29, 1988 defendant was found guilty by a unanimous 12-per-son jury of attempted simple burglary of an inhabited dwelling. Defendant was subsequently sentenced to serve 18 months at hard labor. Defendant now seeks review of his conviction based on eight assignments of error.
FACTS
At approximately 7:15 a.m. on January 25, 1988 William Palmer left his Lake Charles residence for work. Shortly thereafter, his next door neighbor noticed an individual wearing a black jacket ride a bicycle onto the carport of Palmer’s residence and knock at the door. The individual left the area and returned on foot approximately 10 minutes later. The suspect then broke a rear window and entered the home. The neighbor telephoned the police and Palmer advising them that a burglary was in progress. When Palmer and the initial police unit arrived at the scene, they were notified that the suspect was still on the premises. As an additional officer was arriving at the scene, the neighbor noticed the suspect exiting the home and advised the bystanders. Palmer grabbed the suspect who pulled loose and fled in a southerly direction. The first officer on the scene made an unsuccessful attempt at tackling the suspect. A second officer, James Vi-ney, joined in the pursuit and was within a few feet of the suspect when his path was cut off by a city sanitation truck. Although Viney was unable to apprehend the suspect, he did see his face for several seconds.
A third patrol officer, Paul Vince, heard the description of the suspect broadcast on the police radio. Vince was familiar with a person in the vicinity who matched the description and proceeded to the home of Damien Victorian. Vince observed a black jacket in the bushes and a bicycle on the side of the residence. The jacket and bike matched the description supplied by the witnesses at the burglary scene. Harry Victorian, Damien’s father, testified that defendant, a friend of Damien’s, had come to his home at approximately 7:25 a.m. and asked whether he could leave the bike. *1295 Defendant had been wearing a black leather jacket. After speaking with the Victorians, Vince proceeded to defendant’s home and placed him under arrest. Defendant was transported back to the burglary scene ‘where Viney positively identified him as the individual pursued moments earlier. Also, at trial a neighbor of the Victorians corroborated Harry Victorian’s statement that defendant had visited the Victorians at 7:25 a.m. wearing a black jacket. Damien Victorian did not testify.
Defendant testified that he was at home at the time of the burglary. Defendant’s mother stated that she saw him at home from 8:30 a.m. until the police arrived.
ALIBI REBUTTAL
Defendant contends the trial court erred in denying his motion to continue based on the State’s failure to comply with LSA-C.Cr.P. art. 727(B), which requires that after a defendant serves notice of alibi upon the district attorney the State must give notice of the alibi rebuttal witnesses it intends to use at least 10 days prior to trial.
It is clear from the record that the district attorney did fail to comply with Article 727(B). Notice of alibi rebuttal witnesses was served on defendant, at the order of the trial court, on the day the case was called for trial, September 27, 1988. Jury selection began September 28 and testimony was taken on September 29. The trial court denied defendant’s motion to continue based on the failure of defendant to show prejudice therefrom.
We find the trial court did not abuse its discretion under LSA-C.Cr.P. art. 727 in denying defendant’s motion to continue. In order to reverse a conviction based on a violation of Article 727(B), the defendant must show he was prejudiced by the adverse ruling on the sanction requested. Defendant’s “alibi” witness, his mother, testified that he was in her home from 8:30 a.m. until the police arrived. The evidence given by the State’s two “rebuttal” witnesses established defendant’s whereabouts between 7:30 and 8:00 a.m. Therefore, they did not, in fact, rebut the testimony of the alibi witness and defendant was thus not prejudiced by the State’s failure to comply with Article 727(B). See State v. Parker, 421 So.2d 834 (La.1982), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983); State Gradney, 487 So.2d 473 (La.App. 3d Cir.1986).
CONFLICT OF INTEREST
Defendant contends the trial court erred in denying his counsel’s motion to be relieved as appointed counsel due to a conflict of interest. The alleged conflict arose from the fact that defense counsel had represented a possible State’s witness on a prior occasion. The theory of the defense was based on the possibility that that particular witness, Damien Victorian, was the true perpetrator of the burglary.
The trial court refused to relieve defendant’s appointed counsel since his representation of the State witness was apparently terminated. We find that the issue was rendered moot by the State’s failure to call the witness, thereby relieving defendant’s attorney of the necessity of cross-examining him. Therefore, this assignment lacks merit.
CHALLENGE FOR CAUSE
Defendant argues that the trial court erred in denying his challenge for cause of prospective juror Huddle. Defendant challenged Huddle for his expressed problem with the possibility of allowing defendant’s prior conviction to influence his verdict on the present charge. Huddle then expressed an ability to follow the law though he might not agree with it. Defendant subsequently exercised his right to a peremptory challenge against Huddle. We note that defendant exercised all of his peremptory challenges.
A trial judge’s refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Nix, 327 *1296 So.2d 301 (La.1976); State v. Munzy, 464 So.2d 1040 (La.App. 1st Cir.), writ, denied, 468 So.2d 1203 (La.1985). Since Huddle expressed his willingness to decide the case according to the law, the trial court did not abuse its broad discretion in denying defendant’s challenge for cause.
VOIR DIRE INSTRUCTION
Defendant alleges the trial court erred in giving an erroneous instruction to the jury during voir dire as to the use of prior convictions for impeachment purposes, in allowing the State to make erroneous statements on the same subject and in restricting defense questioning on that subject.
The scope of examination of prospective jurors is within the trial court’s discretion. LSA-C.Cr.P. art. 786. The alleged erroneous statement by the trial court as to the use of prior convictions is:
“Now my question to you is this: Would you, if that particular situation arises, and if nothing else in your opinion warrants a conviction, would you, simply because of a prior conviction, convict?”
Defendant argues that the court implied that the jury can consider the prior conviction in the issue of guilt if there is something else to support the verdict. We find that defendant has taken the statement out of context and given it a distorted meaning. The court did state that the use of prior convictions is limited to the issue of credibility. Moreover, the jury instructions given by the court at the close of trial were comprehensive on this point. We find no prejudice to defendant which requires a reversal. Moreover, we do not find that the State made erroneous statements on the subject or that defendant’s questioning was restricted.
RACIAL BIAS
Defendant asserts that the State used peremptory challenges to systematically exclude four black prospective jurors from serving on the jury and failed to give satisfactory racially neutral explanations for the challenges.
The jury venire consisted of 11 black people. Two were peremptorily excused by the defense and four by the State. Four members of the jury were black.
The State gave the following racially neutral explanations for its challenges: The first expressed difficulty in holding others in judgment and voted not guilty in a prior sodomy trial; the second had known defendant and his mother for several years; the third had been terminated by the Lake Charles police department and the State felt he may hold a grudge against the police officers who testified; and the fourth knew defendant’s mother and had a brother who had been recently convicted of homicide. These reasons make it clear that the State did not exercise its peremptory challenges solely on the basis of race. See LSA-C.Cr.P. art. 795; State v. Baker, 528 So.2d 776 (La.App. 3d Cir.1988).
HEARSAY
Defendant contends the trial court erred in allowing Officer Rhodes to give hearsay testimony as to the contents of a third person’s statement in a police report. The trial court allowed the testimony under the business records exception to the hearsay rule.
Whenever evidence is offered under an exception to the hearsay rule against an accused in a criminal case the State must satisfy the confrontation clause. State v. Stucke, 419 So.2d 939 (La.1982). The State did not show that the declarant, Joyce Alexander, was unavailable. However, the State did not actually introduce any statements by the declarant — only the fact that she had reported a bicycle missing, which in fact turned out to be the bicycle defendant allegedly had in his possession on the morning of the burglary and subsequently left in the Victorians' yard. The rest of Officer Rhodes’ testimony consisted of his findings as the evidence officer in the case. We do not find that prejudicial hearsay was admitted into evidence or that defendant’s rights to cross-examination and confrontation were violated by Officer Rhodes’ testimony.
*1297 PRIOR CRIMES
Defendant alleges that the trial court erred in allowing the State to cross-examine defendant concerning his alleged flight from authorities in a prior crime.
Where a criminal defendant testifies on his own behalf, the prosecution may not only establish prior convictions of the defendant but may also cross-examine him about details of the prior convictions in order to show the true nature of the offenses. State v. Truitt, 500 So.2d 355 (La. 1987). The State delved into the facts of the prior crime of which defendant was convicted, particularly as to defendant’s flight on foot from police officers. Apparently the prosecutor was attempting to establish a pattern. We do not find that the limited questions of the State for the purpose of comparing defendant’s previous flight to the instant case prejudicial to defendant. The trial judge did not abuse its great discretion in determining the type of inquiry allowed into the prior conviction. See State v. Chaney, 423 So.2d 1092 (La. 1982).
CLOSING ARGUMENT
Finally, defendant argues that the trial judge erred in allowing the State to argue evidence not introduced at trial during its closing argument. Defendant refers specifically to the State’s reference to the fact that the police officer who identified defendant as the man he chased during the crime was trained in identification. No evidence of the officer’s training was adduced at trial. Defendant contends that since the officer was the only eyewitness to the burglary, defendant was prejudiced by the remark.
To constitute reversible error, the reviewing court must be thoroughly convinced that the jury was influenced by the remark and that it contributed to the verdict. State v. Morris, 404 So.2d 1186 (La. 1981). We do not find that the jury was unduly influenced by this remark. The fact that the police officer has some special training is a natural inference from the evidence adduced that the officer has served seven years on the police force. This assignment lacks merit.
CONCLUSION
For the reasons given above, defendant’s conviction is affirmed.
AFFIRMED.