KNOLL, Judge.
Defendant, Frank Brown, was convicted of armed robbery, a violation of LSA-R.S. 14:64 and attempted second-degree murder,[1] violations of LSA-R.S. 14:27 and LSA-R.S. 14:30.1. He was sentenced to 30 years at hard labor without benefit of parole, probation, or suspension of sentence on each conviction, to run concurrently.
Defendant appeals alleging two assignments of error: (1) the conviction for attempted second-degree murder was contrary to the law and based on insufficient evidence; and, (2) the trial court erred in allowing the State to amend the bill of information immediately before trial over his objection and in allowing the trial to proceed, without formally arraigning him on the amended charge of attempted second-degree murder. Defendant’s second assignment of error was not briefed, and is, therefore, considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982). We affirm in part, and reverse in part.
FACTS
On November 4, 1988, defendant, Frank Brown, and Lionell Newton[2] entered the business premises of Julia Dauzat while she was writing payroll cheeks. Both had visited the office twice earlier in the day. Because the defendant was outwardly nervous on both occasions, Dauzat’s secretary, Debra Thomas, became suspicious of them, particularly since it was customary for Dauzat to keep a handgun on her desk and a large sum of money on the desk top so that employees could immediately cash their paychecks.
Upon entering the office shortly after 3 p.m., Newton pointed a .22 caliber handgun at Dauzat and simultaneously grabbed her .38 caliber handgun off her desk. Meanwhile, the defendant, armed with a hammer, walked to Thomas’ desk approximately eight feet away and ordered her not to make a sound. Newton then demanded, “Where’s it at?” and when Dauzat replied “Where is what?”, he began pistol-whipping her. At that point, defendant dragged Thomas toward the kitchen in the rear of the building.
As defendant and Thomas neared the kitchen and heard Newton and Dauzat tussling in the front office, defendant left Thomas and ran back to the front office. Thomas stepped toward the front office and was able to see Dauzat on the floor; Newton was standing over her with his arms extended and the trigger on the gun cocked. After seeing this, Thomas ran to a closet in another portion of the building, where she hid until the police arrived. As she was closing the door to the closet, a single gunshot rang out. Trial testimony revealed that at this point, Newton had shot Dauzat with the gun pressed against-the back of her head. Immediately, both Newton and defendant fled from the office, taking receipts, Dauzat’s revolver, and cash with them.
Dauzat survived the shot and never lost consciousness. After lying on the floor for approximately five minutes, she pulled herself up to her desk and dialed 911. Because she had difficulty breathing and could barely speak, she left the telephone off the hook so the police could trace the call and send help. After the police arrived, Dauzat was transported to the hospital by ambulance; there, Dauzat named Newton as one of the assailants, and gave police a general description of defendant.
Based on a telephone call from a confidential informant, the police arrested both *1154 Newton and defendant on November 4, 1988, at the home of Pamela Ford. A search of defendant produced a roll of money and some bloody receipts. Later that day, the police obtained Ford's consent to search her home; there, the police found the two guns used in the robbery and shooting. In addition, Pamela Ford advised the police the next day that she found a bank bag in her home which contained Dauzat’s driver’s license and cash between $1,000 and $2,000.
ERRORS PATENT
An inspection of the record reveals two errors patent.[3] For reasons which follow, we find that the first error is harmless, but the second error requires us to vacate defendant’s attempted second-degree murder conviction.
Initially, the record shows that defendant was charged with attempted first-degree murder and armed robbery by a bill of information filed on December 19, 1988. On June 19, 1989, at a suppression hearing the day before trial, the State orally amended the bill of information to attempted second-degree murder and armed robbery. However, the only bill of information in the record is the initial charge of armed robbery and attempted first-degree murder. Thus, we must address the issue of whether a district attorney may orally amend a bill of information the day before trial to a lesser included offense.
An information is a written accusation of crime made by the district attorney, signed and filed in open court or in the office of the clerk. LSA-C.Cr.P. Art. 384. The Louisiana Supreme Court has approved of a district attorney orally amending an indictment from first-degree murder to second-degree murder; a lesser included offense. State v. Gilmore, 332 So.2d 789 (La.1976). In State v. Gilmore, the court stated:
“We perceive no substantial difference in the procedure followed by the district attorney in this case and think it would be inconsistent to hold that he could not accomplish formally what could have been done without formality. We therefore conclude that the district attorney was inherently empowered to amend the indictment to charge a lesser included offense, although there was no specific codal authorization for this procedure.” Id. at 794.
In the case sub judice, defendant was fully apprised of the amended charges and suffered no prejudice. Attempted second-degree murder is a responsive verdict to the initial charge of attempted first-degree murder. Under the facts of this case, the only difference in the elements of the crime that the jury would consider would be whether the defendant had the specific intent to kill or inflict great bodily harm during the commission of one of the enumerated felonies, i.e., armed robbery. After carefully reviewing this issue, we find that the defendant was not subjected to hardship or prejudice when he was tried by a jury on a lesser included offense. State v. Clark, 466 So.2d 686 (La.App. 3rd Cir.1985).
Lastly, a review of the record shows that defendant was subjected to double jeopardy.
Double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. State v. Vaughn, 431 So.2d 763 (La.1983). Double jeopardy exists where a defendant is convicted of felony-murder and the underlying felony. State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La.1974). In State v. Cotten, *1155 438 So.2d 1156 (La.App. 1st Cir.1983), writ denied, 444 So.2d 606 (La.1984), convictions of attempted first-degree murder and attempted armed robbery, the underlying felony, subjected the defendant to double punishment for the same criminal conduct thus, the conviction of attempted armed robbery was reversed and vacated.
In the present case, defendant was convicted of attempted second-degree murder and armed robbery. The record is clear that defendant’s conviction for attempted second-degree murder was based on defendant’s commission of armed robbery, the underlying felony. The jury charge reflects that defendant’s attempted second-degree murder conviction resulted from the prosecution’s use of the felony-murder doctrine. When the trial court outlined the requirements the state had to satisfy to prove attempted second-degree murder, the jury was only informed of the statutory provision defining second-degree murder as a killing of a human being during the perpetration or attempted perpetration of an armed robbery. LSA-R.S. 14:30.1(A)(2). Moreover, a review of the evidence clearly shows the state intended to establish defendant’s criminal culpability for Dauzat’s shooting, only because it occurred during an underlying felony of armed robbery, enumerated in LSA-R.S. 14:30.-1(A)(2). Therefore, we find that defendant was subjected to double jeopardy when the jury convicted him of both attempted second-degree murder and armed robbery.
To remedy a violation of double jeopardy, the reviewing court vacates the conviction and sentence of the less severely punishable offense and affirms the conviction and sentence of the more severely punishable offense. State v. Doughty, 379 So.2d 1088 (La.1980); State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990).
In the case sub judice, the defendant could have received a maximum of 50 years at hard labor for his attempted second-degree murder conviction, and a maximum of 99 years without benefit of parole, probation, or suspension of sentence for his armed robbery conviction. Therefore, we find that we must reverse and vacate the defendant’s conviction of attempted second-degree murder, the less punishable offense.
Having reversed defendant’s conviction for attempted second-degree murder, defendant’s first assignment of error, alleging the insufficiency of the evidence to convict him of attempted second-degree murder, is rendered moot and need not be addressed.
DECREE
For the foregoing reasons, IT IS ORDERED, ADJUDGED, AND DECREED that the defendant’s conviction of attempted second-degree murder is reversed and vacated, and defendant’s conviction of armed robbery and sentence of 30 years at hard labor without benefit of parole, probation, or suspension of sentence is affirmed.
AFFIRMED IN PART AND REVERSED IN PART.

. Defendant was originally billed with attempted first-degree murder. The day prior to trial the district attorney orally amended the bill of information to attempted second-degree murder. For further explanation, see our discussion infra commencing with the first issue under the errors patent review.

. Prior to this trial, Lionell Newton was convicted of armed robbery (LSA-R.S. 14:64) and attempted second-degree murder (LSA-R.S. 14:27 and 14:30.1) and was awaiting sentencing.

. Defendant also received an illegal sentence for his attempted second-degree murder conviction. Attempted second-degree murder is punishable by imprisonment at hard labor for not more than 50 years. In the present case, defendant was sentenced to 30 years at hard labor without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:27 D(l) does not provide for the imposition of sentence without benefit of parole, probation, or suspension of sentence. State v. See, 467 So.2d 525 (La.1985). Since, however, we are vacating defendant’s attempted second-degree murder conviction under our double jeopardy analysis, we do not have to amend defendant’s illegal sentence.