LLOYD G. TEEKELL, Judge Pro Tern.
The defendant, James H. Byrd, was indicted by a St. Martin Parish Grand Jury on May 4, 1984, and charged with aggravated kidnapping, a violation of La.R.S. 14:44; attempted first degree murder, a violation of La.R.S. 14:30 and 14:27; armed robbery, a violation of La.R.S. 14:64, and aggravated escape, in violation of La.R.S. 14:110 B.
On October 26, 1984, following a trial by a twelve (12) person jury, defendant was found guilty as charged. Defendant filed a motion for post verdict judgment of acquittal on the matter of the aggravated kidnapping. Following a hearing on that motion, the trial court held that the evidence for aggravated kidnapping was insufficient, but that the evidence supported a conviction for simple kidnapping. Defendant waived all delays for sentencing and was sentenced as follows: For the armed robbery, the defendant was sentenced to serve seventy (70) years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; attempted first degree murder, to serve thirty (30) years at hard labor to run consecutively with the sentence for armed robbery; simple kidnapping, to serve five (5) years imprisonment with the Department of Corrections, to run concurrent with the other sentences; and for the charge of aggravated escape, defendant was sentenced to serve ten (10) years at hard labor to run consecutive with the other sentences.
Defendant appeals his convictions and sentences alleging sixteen (16) assignments of error.[1] However, as defendant briefed *89 only four (4) assignments of error, the other twelve (12) are considered abandoned and will not be addressed.[2]
FACTS
On December 9, 1983, the defendant, James H. Byrd, escaped from the St. Martin Parish jail. The defendant was transported from the jail to a doctor’s office in Lafayette, Louisiana. As no regular patrol car was available, the prisoner was taken to Lafayette in a regular automobile owned by Warden Charles Doucet. Deputy Russell Calais was assigned to transport the prisoner to Lafayette.
Upon reaching Pride Plaza in Lafayette, the location of defendant’s doctor’s office, the defendant wrestled Deputy Calais’ gun away from him. Defendant Byrd told the deputy he had his finger on the trigger, and would fire the gun if necessary to get it from the deputy. Fearing for his safety, and unable to alert anyone outside his vehicle, the deputy relinquished his weapon.
Defendant Byrd informed the deputy that the appointment with the doctor had only been a means to set up his escape. He made it very clear to Deputy Calais that unless he followed defendant Byrd’s orders, he would be shot.
The defendant then instructed the deputy to drive him to a certain location. He held the gun pointed at the deputy, with the hammer cocked, and informed the deputy *90 that he would shoot him if he did not do as instructed. Byrd also informed the deputy that he had hired accomplices who were going to kill Deputy Calais. During the journey, the defendant remained armed with the .38 calibre pistol taken from Deputy Calais. The defendant took the deputy’s belt clips and a bit of change from the deputy.
As the deputy drove toward the defendant’s destination, Byrd informed him that he had to get rid of the deputy, but, in a few days, he’s phone the Deputy’s widow and tell her where to find his body. At one point, the defendant pointed the gun at Deputy Calais’ head, pulled back the hammer, and was stopped from shooting the deputy when he convinced Byrd that shooting him in this location would attract too much attention. Realizing he had no choice but to flee for his life, the deputy suddenly stopped the vehicle, jumped out, and ran toward a wooded area for safety. As he ran from the car, he heard a single shot fired. The defendant then drove away.
The defendant apparently drove through Mississippi and into Georgia where he stole an automobile from a dealership. He then drove to Hollywood, Florida, where, following a series of fortuitous events, he was apprehended by local police. A routine check determined that the Porsche he was driving was stolen as was the gun he had tried to pawn.
Following his arrest, and prior to any interrogation, the defendant spontaneously revealed to the arresting officer his true identity and the fact that he was an escaped prisoner from Louisiana. Defendant was then taken to police headquarters, where, following the signing of a Waiver of Rights form advising him of his rights, he was questioned by three (3) detectives of the Hollywood Police Department. The defendant then gave a tape recorded statement which was later transcribed into a 44-page document presented at trial.
The defendant was returned to St. Martin Parish where he was later tried on the charges heretofore setforth.
ASSIGNMENT OF ERROR NO. 1:
The defendant argues through this assignment that the trial court erred in denying defendant’s motion to recuse the district attorney from the prosecution of this case. Defendant’s argument centers around the fact that Mr. Kidd, an assistant district attorney for St. Martin Parish, had served as defendant’s appointed counsel on this case while still associated with the indigent defender board. Thus, defendant asserts, that allowing the St. Martin Parish district attorney’s office to prosecute the case with Mr. Kidd on staff conflicted with the fair and impartial administration of justice.
The Louisiana Code of Criminal Procedure provides in pertinent part:
“A district attorney shall be recused when he:
(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.”
The mere fact that Mr. Kidd was acting in his capacity as appointed counsel to defendant in this case later joined the district attorney’s office does not require a recusal of the district attorney and his entire staff. Mr. Kidd took no part in the prosecution of the case. Additionally, the testimony indicates that there was little confidential information exchanged which, if divulged could prejudice defendant’s case. As the court held in State v. Brazile, 231 La. 90, 90 So.2d 789 (1956), such prior consultation with an assistant district attorney, who did not participate in the case, would not be grounds for recusing the district attorney. The court noted that it would be presumed that as a member of the bar in good standing, the assistant would respect the defendant’s confidence.
“The recusal or disqualification of an assistant district attorney does not require the recusal of the district attorney and his other assistants. State v. Brazile, 231 La. 90, 90 So.2d 789 (La.1956). Additionally, in an action to recuse the district attorney, the defendant bears the burden of showing by a preponderance of the *91 evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Marcal, 388 So.2d 656 (La.1980).” State v. Edwards, 420 So.2d 663 (La.1982).
Thus, it appears that even if defendant were able to show, by a preponderance of the evidence, that Mr. Kidd ought to be recused, such would not require the recusal of the district attorney or his assistants. This assignment is without merit.
ASSIGNMENT OF ERROR NO. 2:
Through this assignment, the defendant asserts that the trial court erred in denying his motion to suppress the confession made to Florida law enforcement officers. Defendant maintains that he was threatened and coerced into giving a statement and that the confession was not freely and voluntarily given.
“Before a confession may be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducement, or promises. La.R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 [16 L.Ed.2d 694] (1986).” State v. Rankin, 357 So.2d 803 (La.1978). See also State v. Vacarro, 411 So.2d 415 (La.1982).
The state presented extensive testimony by four (4) Florida law enforcement officers, three (3) of which were directly involved in the taking of defendant’s statement. There was no indication of any coercive measures taken against defendant, and in fact, the testimony appears to establish that the officers enjoyed a good rapport with the defendant who appeared to be very cooperative with the Florida officers. In addition, defendant offered no evidence to substantiate his allegations of physical abuse and threatening behavior. Clearly, the trier of fact was convinced that the officers were giving an accurate account of the events surrounding the defendant’s confession. The defendant, however, did not present a credible version.
“The admission of a confession in the first instance is a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are unsupported by the evidence, (citations omitted).” State v. Vaccaro, supra, at 423. See also State v. Lindsey, 404 So.2d 466 (La.1981).
It appears from the testimony in the court below that the trial judge’s determination that the confession was made free and voluntarily is fully supported by the evidence presented. This assignment is without merit.
ASSIGNMENT OF ERROR NO. 3:
The defendant argues through this assignment that the trial court erred in denying defendant’s motion for post ver-duct judgment of acquittal on the offense of attempted first degree murder in that the state failed to prove specific intent to kill.
The defendant was charged with attempted first degree murder. The pertinent statutes provide that:
“First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, ...”
La.R.S. 14:30 subd. A(l).
“Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishment of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether under the circumstances, he *92 would have actually accomplished his purpose.” La.R.S. 14:27(A).
Thus an essential element of the crime which the state must prove is that the defendant acted with a specific intent to kill Deputy Calais.
“La.R.S. 14:27 provides that to attempt a crime an accused must do an act tending directly towards accomplishing his object, ‘having a specific intent’ to commit the crime. The crime of murder is the ‘killing of a human being’ under certain circumstances. Thus, as this court held in State v. Roberts, 213 La. 559, 35 So.2d 216, 217 (1948), ‘the elements of the crime of attempted murder are specific intent to kill a human being and an overt act in furtherance of the object.’ It has, therefore, universally and without exception been held in American jurisdictions that a specific intent to kill is an essential element of the crime of attempted murder.” State v. Butler, 322 So.2d 189 (La.1975). See also, State v. Hall, 441 So.2d 429 (La.App. 2 Cir.1983).
Defendant argues that there was no evidence offered to prove that defendant Byrd fired a gun at Russell Calais. Without such evidence, the defendant asserts that the jury could not reasonably infer a specific intent to kill.
“... Intent, absent an admission of such by a defendant, must necessarily be proven by inferences from surrounding facts and circumstances.” State v. Hall, supra.
The testimony of record appears to support the jury’s finding that defendant is guilty of attempted first degree murder. There is no dispute as to the fact that defendant armed himself with the deputy’s gun and escaped from lawful custody, thus bringing his actions within the purview of La.R.S. 14:30, subd. A(l). In addition, Deputy Calais testified that the defendant held him at gunpoint, with the hammer cocked, threatening to kill him if he did not obey defendant’s commands.
“... And James said, T know you see this car ... this unit. You better not do nothing stupid ‘cause I will pull this trigger.’ ” (Tr. p. 841).
Again the defendant evidenced his intent to kill Deputy Calais.
A. Okay, as we drove on, I asked Mr. Byrd again I said ‘James, why don’t you just forget about this? Give me back my gun and I’ll bring you back to the doctor’s office and we’ll say that we seen the doctor.’ He said, ‘Man, I can’t do it’, he said, ‘cause I done paid these people twenty-five thousand dollars to get rid of the cop.’ ‘Especially if you were a white deputy, you’d be dead now.’ He said, ‘So just shut up and do what I tell you to do.’” (Tr. p.844).
The defendant further evidenced his intent to kill Deputy Calais as part of his escape plan:
A. After I turned right, he told me, ... he said, ‘Now, this is your last drive.’ He said. T have to get rid of you.’ He said, ‘So, drive.’ He said, T will call your wife and let her know that your’re dead and let her know where they can find you, not not but a few days later.' (Tr. p. 846).
As Deputy Calais continued driving down the highway, the defendant again raised the gun up and cocked the hammer back, but Deputy Calais again convinced him not to shoot as it might attract attention in this location. As they began to approach a more deserted, wooded area, the defendant again lifted the gun, pointed toward the deputy, whereupon, in fear of his life, the deputy hit the brakes, turned the wheel sharply causing the car to skid around toward a levee, opened the door and jumped out. As the deputy ran for cover in the woods, he heard a shot fired. It is too obvious for comment as to why the deputy did not turn to observe who was firing the shot.
When the defendant was arrested in Florida, he had five bullets in his possession removed from the deputy’s stolen gun. This was one round short of the gun’s full capacity.
Thus it appears that there was enough evidence presented from which the jury *93 could infer that defendant fired a shot at Deputy Calais with the specific intent to kill. While it is true that the defendant may have only intended to frighten or maime the deputy, the testimony of Deputy Calais leaves little doubt that defendant fully intended to kill the deputy to insure his successful escape. As the credibility of witnesses who testify before the trier of fact is left to the discretion of the trier of fact, there appears to be no reason to overturn the jury’s finding herein. Clearly, if the jury believed Deputy Calais’ testimony, there was more than enough evidence presented from which the jury could infer that the defendant fully intended to kill the deputy and that he did an act or acts in furtherance of that intent.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 4:
Finally through this assignment, the defendant argues that the trial court erred in sentencing defendant to an excessive term of imprisonment. Defendant argues that the sentencing judge did not consider the factors enumerated in La.C.Cr.P., art. 894.-1(A) and (B), did not review defendant’s personal history or prior record or his potential for rehabilitation, nor did the sentencing judge base his decision on any factual determinations. This is simply not supported by the record below.
Defendant himself apprised the sentencing judge of his lengthy past criminal record and personal history. In addition, following his statement that he had indeed considered the guidelines in article 894.1, the judge then specifically stated:
1. “There is undue risk that during the period of any suspended sentence or probation, that you will commit another crime and could be another serious crime”. (Tr. p. 1092-93).
2. That defendant is “in need of correctional treatment or custodial environment...” (Tr. p.1093).
3. “[T]hat any lesser sentence would depreciate the seriousness of the defendant’s numerous crimes that he committed.” (Tr. p. 1093).
This tracks the provisions of La.C.Cr.P. art. 894.1(A) exactly. It is also apparent that the judge considered many of the factors in La.C.Cr.P. art. 894.1(A):
(1) That the conduct here could have caused very serious harm; i.e., the death of a deputy sheriff acting in the line of duty.
“I think Mr. Byrd could have easily escaped without attempting the life of Deputy Calais, a young deputy doing his job in the course and scope of his employment with the St. Martin Parish Sheriff’s Department and by the luck of God and bad shot, he may not be here today.” (Tr. p. 1093).
(2) That defendant did contemplate his conduct would cause or threaten serious harm.
La.C.Cr.P. art. 894.1 B (2).
“I think that was a gross serious crime attempted by you....”
(Tr. p. 1093).
(3) Defendant acted under no provocation. La.C.Cr.P. art. 894.1 B (3). This fact is apparent from the record and was recognized by the judge when he said defendant could have effected an escape without attempting to kill the deputy. (Tr. p. 1093).
The sentencing judge also articulated his belief, that based on what was presented in this case, and given defendant’s history, such conduct would likely reoccur and it would be a serious crime. (Tr. p. 1092-93). See La.C.Cr.P. art. 894.1B(7), (8), (9).
This court has held repeatedly that:
“It is well settled Louisiana law that a mere recitation of the considerations under La.C.Cr.P. art. 894.1 does not satisfy the articulation and recordation requirements of that law:
State v. Harvey Derail White, Jr. [476 So.2d 1162], CR84-1082 (La.App. 3 Cir.1984). See also, State v. Williams, 396 So.2d 296 (La.1981), appeal after remand 412 So2d 1327 (La.1982); and State v. Perry, 472 So.2d 344 (La.App. 3 Cir.1985).
“However, Article 894.1 does not require the trial judge to articulate every aggra *94 vated and mitigating circumstance so long as the record reflects that he adequately considered these guidelines in particularizing the sentence to the individual defendant.” State v. Perry, supra. at 346.
The standard on appeal for determining whether a sentence imposed by a trial court is unconstitutionally excessive has been established by this court as follows:
“[A] sentence is excessive if it is grossly disproportionate to the severity of the offense. State v. Bonanno, 384 So.2d 355, 358 (La.1980). In determining whether the penalty is grossly disproportionate, the court must consider ‘the punishment and the crime in light of the harm to society caused by its commission, and determine whether the penalty is so disporportionate to the crime committed as to shock our sense of justice.’ Id. In reviewing a claim of excessive sentencing, the trial judge is to be afforded wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of discretion.” (citation omitted). State v. Morgan, 428 So.2d 1215, at page 1216. (La.App. 3 Cir.1983).
After careful review of the record and the law involved in this case, it does not appear that the sentencing judge has abused his discretion. The defendant was convicted of armed robbery, a violation of La.R.S. 14:64 which provides for a penalty of imprisonment at hard labor for not less than five (5) nor more than ninety-nine (99) years. Defendant was sentenced to serve seventy (70) years on this count. Defendant was also convicted of attempted first degree murder of a police officer in the line of duty, a violation of La.R.S. 14:27 and 14:30, which provides for a maximum sentence of fifty (50) years; defendant was sentenced to serve thirty (30) years on this count. Defendant was also convicted of aggravated escape in violation of La.R.S. 14:110. This crime is punishable by a sentence of five (5) to ten (10) years, defendant received the maximum.
A review of the judge’s reasons for sentencing demonstrates that defendant has a long history of criminal involvement, that he purposefully planned his escape and planned the death of the deputy to effect a “clean getaway” when such killing would have been completely unnecessary. In short, given the serious nature of these offenses and the particular facts of this case, it does not appear that the sentences handed down are disproportionate at all and certainly does not appear to shock our sence of justice.
This assignment is without merit.[3]
Accordingly, the convictions and sentences are affirmed. The appellant shall pay the costs of this appeal.
AFFIRMED.
DONEMGEAUX, J., concurs and repeats that our Constitution and Statute do not mandate review of sentences for excessiveness when the sentence falls within the limits of the sentencing statute.

. The defendant submitted sixteen (16) Assignments of Errors as follows:
"(1) The court erred in denying defendant’s motion to recuse the district attorney’s office from the prosecution of the case for the rea *89 son that Kim Kidd, his former defense counsel, joined the prosecutor’s staff shortly after being relieved of his responsibility to represent the defendant.
(2) The trial court erred in denying defendant’s motions to suppress statements made by the defendant.
(3) The trial court erred in denying defendant’s motion for Post Verdict Judgment of Acquittal on the offense of attempted first degree murder because the State failed to prove specific intent.
(4) The trial court erred in sentencing the defendant to a total of one hundred ten years at hard labor for the reason that the sentences are cruel and excessive punishment as they are consecutive.
(5) The trial court erred in denying the defendant’s motion for continuance to take Writs to the Court of Appeal on the issue of the Court’s denial of defendant’s motion to recuse the district attorney’s office for the reason that the defendant was previously represented by a member of the prosecutor’s staff.
(6) The trial court erred in denying defendant’s objection to the prosecutor’s attempts during voir dire to explain reasonable doubt to the jury.
(7) The trial court erred in denying defendant’s challenges for cause of Juror Courville whose grandfather serves as a Deputy Sheriff for St. Martin Parish and Juror Dupuis whose father is Chief of Police, Breaux Bridge, St. Martin Parish, Louisiana.
(8) The trial court erred in denying defendant’s motion for a mistrial due to the 24 hour prejudicial delay in the selection of jurors.
(9) The trial court erred in denying defendant’s motion for a mistrial for the reason that a selected juror entered the courtroom during the hearing on the motion to suppress, a matter which he had been ordered out of the courtroom on.
(10) the trial court erred in denying the defendant’s motion to suppress items found in the car he was driving which was seized without a search warrant.
(11) The trial court erred in overruling defendant’s objection to the prosecutor’s remarks regarding inculpatory statements by the defendant in contravention of Article 767 of the Code of Criminal Procedure.
(12) The trial court erred in denying defendant’s motion for a mistrial pursuant to article 770 as the prosecutor made references to inculpatory statements during the opening which in effect destroyed defendant’s right to remain silent.
(13) The trial court erred in overruling the defendant’s objection to the introduction of items seized from a car or cars driven by the defendant without a search warrant.
(14) The trial court erred in admitting into evidence State’s Exhibit No. 11, transcript of the statement taken from the defendant, for the reason that the tape of the conversation was the best evidence and the transcript contains gaps and missing words which may have altered the meaning of the test if produced.
(15) The trial court erred in allowing State’s witness Mr. Serrette to give hearsay testimony regarding remarks made by Mr. Calais sometime after he departed the auto he was driving on the afternoon of the 9th of December.
(16) The record of the evidence does not support the jury’s finding of guilty to armed robbery in that the State did not prove the elements of the offense beyond a reasonable doubt."

. Assignments of Errors not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

. While the writer of this opinion laboriously read through the 1000 page transcript in this case to review the complaint of excessive sentence, it appears to be a distortion of the plain wording of the Louisiana Constitution to construe it to provide or mandate appellate review of sentences that are within the ambit of the applicable criminal statutes.